## John V. Brevoort and others v. The City of Detroit and others.

*Contract for paving: Advertising for bids.* The common council of Detroit advertised for bids for paving a specified distance on a named street, and bids were put in accordingly, and a contract was made, under direction of the common council, with the lowest bidders for paving only a portion of the distance specified, "or farther if ordered;" subsequently the common council directed a contract to be made with the same parties for paving the residue of the specified distance; no new contract was, in fact made but the whole work was done under the original contract :—

*Held,* That the whole work was covered by the original contract, and the action of the council in ordering the latter portion of the work to be done, was not the letting of a new contract, requiring the advertising of proposals a second time.

The objection to the right of the common council to advertise for bids for more than they propose to have done immediately, and then to make an optional contract like this, that it is peculiarly susceptible of abuse and fraud, in a case where there is no showing of either, is untenable.

*Paving: Streets: Sidewalks: Common council.* The common council of Detroit have power to pave those portions of a street before used as sidewalks, and thus indirectly abolish the sidewalks. There is no rule of law requiring a portion of a street to be set apart for foot passengers, and the whole matter is in the control of the council.

*Legislative power: Re-assessment: Paving.* The legislature may authorize a re-assessment for paving to be made where the first assessment has failed because no apportionment was provided for by the act under which it was made.

*Statute construed: Re-assessment.* The act of 1869 (*Sess. L. 1869, Vol. 3, p. 1689*), amending the charter of the city of Detroit and providing for a new assessment in certain cases where a former assessment has been vacated or held invalid, requires the re-assessment to be made in accordance with the law in force, when it shall be made, without reference to the law as it stood when the original assessment was made.

This act confers a continuing power which is not exhausted by a single re-assessment, nor until an assessment is made which can be enforced.

BREVOORT v. DETROIT.

A re-assessment under said act, which varies from the original assessment only to avoid the former errors, but whose purpose is the same, will not be held void for variations which are purely technical.

The case of a re-assessment under said act stands on its own reasons, and is not within the intent of the provision of section 89 of chapter 7 of the amended charter (Sess. L. 1869, Vol. 3, p. 1724), prohibiting the making of a new assessment district after the bids for paving are received. The want of an assessment district originally, might have been the very difficulty requiring new proceedings.

*Assessment district: Blocks: Paving.* Where the paving for which the assessment is made, terminates in the middle of a block, it is no valid objection to such assessment that the assessment district divides a block. Section 89 of chapter 7, of the amended charter (Sess. L. 1869, Vol. 3, p. 1724), does not go to the extent of requiring that paving shall be extended farther than the public needs require, in order to make a cross street its terminus.

*Injunction: Appeal: Contempt.* Where a bill for an injunction against the collection of a paving assessment, upon which a preliminary injunction has been granted, was dismissed on the hearing in the court below, an appeal from that decree by complainants does not revive the injunction, and the city authorities are not liable as for contempt for proceeding, during the pendency of such appeal, to enforce the collection of said assessment.

*Heard January 9. Decided April 3.*

Appeal in Chancery from Wayne Circuit.

This was a bill filed by John V. Brevoort, George H. Prentis, Homer W. Candler, James W. Candler, William R. Candler and Marie D. Lyon, against the city of Detroit, Thomas Joyce (city collector), and Hubbard Smith, Calvin A. Cook, and Jesse H. Farwell (contractors), to restrain the collection of an assessment against the lands described in the bill, for paving Woodbridge street in front of said premises. A preliminary injunction was granted on filing the bill. The defendants answered, and proofs were taken. On the hearing the bill was dismissed, and the complainants appealed.

Pending this appeal, at the January term, 1872, a motion was made on behalf of the complainants, based upon a showing that the city authorities were taking steps to enforce the collection of said assessment, for an order that the defendants show cause why an attachment as for contempt should not issue against them.

*D. B. & H. M. Duffield,* for the motion.

*George V. N. Lothrop, contra,* is stopped by the court.

THE COURT held that the appeal did not revive the injunction, and that the defendants were not liable as for contempt, and denied the motion with costs.

---

*D. B. & H. M. Duffield,* for complainants.

*J. P. Whittemore, city-counsellor, Moore & Griffin* and *George V. N. Lothrop,* for defendants.

COOLEY, J.

This is a bill to restrain the collection of a paving assessment in the city of Detroit. The charter requires contracts for such work when the cost is to exceed two hundred dollars, to be let to the lowest bidder after public notice. This paving was to be done on Woodbridge street, and proposals were advertised, inviting bids for the paving from Third street to the west line of the Brevoort farm; a distance of about a mile. Bids were put in accordingly, but the common council, instead of directing an unconditional contract with the lowest bidders for the whole work, entered into one for the paving to Eleventh street, which was for about one-half of the distance, "or farther if ordered." This contract was dated July 6, 1867; and the work provided for was done under it. On the first day of October following, the common council directed the controller to contract with the same parties for completing the paving from Eleventh street to the west line of the Brevoort farm; and they went on and completed it, but without any new contract being, in fact, made; all parties

appearing to understand that the first contract covered the whole work at the option of .the council.

The first objection to the assessment is to this action of the council on October 1, which the complainants treat as the letting of a new contract, and which they insist should only have been after the advertising of proposals a second time. We think, however, the parties were correct in treating this work as being covered by the original contract. It was all to be done under that contract "if ordered" by the council; and they gave order accordingly. It is suggested that a right in the council to advertise for bids for more than they propose to have done immediately, and then to make an optional contract of this description, would be one not to be recognized, because peculiarly susceptible of abuse and fraud; but it is not pretended that there was any fraud, or could be any abuse in the present case, and cases of possible fraud need not now be anticipated. The objection taken we think untenable.

A second objection is, that the paving included those portions of the street before used as sidewalks, and that the sidewalks were in effect abolished, not by direct resolution for that purpose, but indirectly, by ordering the paving This is claimed to be illegal, but we do not very distinctly perceive the reason why. A street includes the whole width of public way; it is customary in a city to set apart a portion of it for foot passengers; but there is no rule of law absolutely requiring this, and in many parts of an incorporated town it might be needless. We have no doubt the whole matter was within the control of the council.

A third objection is based upon the fact that the first assessment made to defray the cost of the work was supposed to have been irregular and was abandoned, and legislation was obtained authorizing a re-assessment. In fact the second assessment proved irregular also, and the one

now before us for examination was the third. This re-assessment is supposed to be void for several reasons.

One is, that the original assessment being void, there was no constitutional power in the legislature to order a re-assessment. This, however, may depend upon the nature of the original infirmity. If the difficulty there was that the sums assessed did not constitute any just or equitable charge for public purposes upon the property upon which it was sought to be imposed, it is quite clear that the legislature could not make it such a charge. But if the defect consisted in some irregularity of proceeding, or in some oversight in the law itself, in consequence of which a just and equitable claim had failed to be legally imposed, there can be no good reason why the legislature should not retrospectively supply the oversight or cure the irregularity. The actual difficulty in the present case, we are told by the briefs, was that no apportionment was provided for by the act under which the first assessment was made. Surely there could be no reasonable objection to this being provided for by a new assessment. We are referred to *Hart v. Henderson, 17 Mich., 218,* as laying down a different rule; but this is a misapprehension of that decision. It was admitted by the record in that case that a portion of the sum imposed as a tax upon the lands of complainant was levied without authority of law; and consequently was neither a legal nor an equitable claim against him or his property. The exact opposite is the case here. A claim which is both legal and equitable having failed of legal provisions for its enforcement, the legislature has stepped in to do what is just in the premises, by supplying such provisions. The act providing for the re-assessment was adopted in 1869, as an amendment to the city charter, and a question is raised regarding its proper construction. It declares that "Whenever any special assessment for the

improvement of a street, or for any other public work, shall, in the opinion of the common council, be invalid, said council may vacate and set the same aside. And when any such special assessment shall be so vacated, or shall be held invalid by the judgment or decree of any court of competent jurisdiction, said council may cause a new special assessment to be made for the purpose for which the original assessment was made. Such new assessment shall be made in the manner provided for making original assessments of like nature, in force at the time when such assessment should be made."—*Sess. L. 1869, Vol. 3, p. 1689.* The complainants insist that this provision requires the re-assessment to be made in accordance with the law in force at the time of the original assessment. We think, on the other hand, that though awkwardly worded, it requires the assessment to correspond to the law in force when it shall be made; and as the one in question does so correspond, it is not objectionable on that score.

It is also insisted that when the council has once made a re-assessment it has exhausted its power, and cannot order a second one. But we think the plain purpose is to confer a continuing power; and that it is not exhausted in any case until an assessment is made which can be enforced.

It is also claimed that the re-assessment is not for the same purpose as the first, and therefore not justified by the amendatory law. The specifications under this point are purely technical, and would go to defeat almost any law passed to cure irregularities. Such laws must have a reasonable interpretation, to accomplish the beneficial purpose designed. The last assessment unquestionably varies from the first; but it is varied only to avoid the former errors, and its purpose is the same.

It is also objected that the assessment district divides a block, which is forbidden by § 39 of Chap. 7 of the

amended charter.—*Sess. L. of 1869, Vol. 3, p. 1724.* This objection is based upon the fact that the paving assessed for terminated at a point where no street crossed the street which was being paved. Certainly the district must terminate there if anywhere. What the section in question means, as we understand it, is that when the paving extends across the front of a block, the whole block shall be included in the same district; not that paving shall be extended farther than the public needs require, in order to make a cross street its terminus.

It is further objected that the law was not followed, inasmuch as the council made a new assessment district after the bids for paving were received; which is forbidden by section thirty-nine, above referred to. We need not examine this objection particularly, because we think the case of a re-assessment stands on its own reasons, and is not within the intent of this provision. The want of an assessment district originally, might have been the very difficulty requiring new proceedings.

We find no error in the decree appealed from, and it must be affirmed.

The other Justices concurred.