Newman, J.
In the case of City of Youngstown v. Fishel, 89 Ohio St., 247, decided January 13, 1914, the city, in assessing the cost and expense of a street improvement by the foot front of the property bounding and abutting upon the improvement, disregarded the rule as to the assessment of corner lots announced in Haviland v. City of Columbus, 50 Ohio St., 471, and assessed the entire lengthwise frontage of the corner lots abutting upon the improvement. A corner-lot owner instituted a proceeding to enjoin the collection of the assessment against her property upon the ground that it was excessive and illegal. She was successful in her contention in the lower courts, but this court, considering the question of corner-lot assessments de novo, overruled the Haviland case and denied relief to the corner-lot owner. In the instant case the council of the city of Sidney, in its assessing ordinance, passed in December, 1913, followed the rule announced in the Haviland case. Defendant in error sought to enjoin the assessment against his property on the ground that it had been illegally made, in that the corner lots had not been assessed their lengthwise frontage. If that method had been adopted the front feet assessable would have been increased by the differ *332 ence between the lengthwise frontage of the corner lots and their breadthwise frontage, and the assessment per foot on the property bounding and abutting upon the improvement would have been $3.88 instead of $5.27.
Counsel for the city do not question the correctness of the decision in the Fishel case and do not ask that the rule there announced be changed, but they insist that the decision should not have a retroactive effect. Their claim is that the proceedings of the city council had before the decision in the Fishel case was announced, created a vested right in the property owners affected, among them being those who had paid their assessments in full prior to December 31, 1913, and also an obligation in the nature of a contract between the city and each property owner.
In the Fishel case the judicial construction of Section 3812, General Code, as to the assessment of corner lots under the third method of assessment provided for in the section, was changed. Counsel invoke as applicable to this case a rule relating to a change of judicial construction of statutes which has been recognized and approved by this court in a number of cases and is stated by Mr. Chief Justice Waite in Douglass v. County of Pike, 101 U. S., 677, 687, as follows: “The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative enactment; that is to say, make it prospective, but not retroactive. After a statute has been settled by judicial construction, *333 the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts, as an amendment of the law by means of a legislative enactment.”
In that case, where this rule was applied, it was held that where municipal bonds had been put upon the market as commercial paper, the rights of the parties thereto were to be.determined according to the statutes of the state as they were then construed by the highest court, and in a case involving those rights the court would not be governed by any subsequent decision in conflict with that under which they accrued. It was stated in the opinion:
“As a rule, we treat the construction which the highest court of a State has given a statute of the State as part of the statute, and govern ourselves accordingly; but where different constructions have been given to the same statute at different times, we have never felt ourselves bound to follow the latest decisions, if thereby contract rights which have accrued under earlier rulings will be injuriously affected.”
The holding in that case was based upon the ground that contract rights were involved.
In Lewis, Auditor, v. Symmes et al., 61 Ohio St., 471, Judge Shauck, in referring to the rule we have quoted, uses this language:
“Its purpose is to secure the full operation of the constitutional prohibition of laws impairing the obligation of contracts. It is apparent, alike from *334 the terms in which the rule is stated and from its reason and purpose, that it can be invoked only for the enforcement of rights which rest in contract. It does not appear that it has ever been applied to any other purpose.”
And in Thomas et al. v. The State, ex rel., 76 Ohio St., 341:
“This doctrine may be invoked as a matter of right by all suitors who are in.a position to assert the binding obligation of contracts.”
It is to be observed that the validity of no bond issued by the city in the improvement proceeding is drawn in question in the present case. Nor is there involved any contract between the city and a contractor in which the obligation of the city can be impaired, as was the case in Goodale v. Fennell et al., 27 Ohio St., 426. Nowhere in the pleadings or in the agreed statement of facts does it appear that there is any obligation on the part of the city which would be affected by an order of the court enjoining it from collecting from defendant in error that part of the assessment against his property which is illegal. Such an order would, at the most, require another apportionment or a readjustment of the property within the assessing district. Raymond v. Cleveland, 42 Ohio St., 522. The assessment authorized by statute does not require the assent of the property owner. It is not in the nature of a contract. The city, acting under the authority conferred upon it by the general assembly, imposes upon the property benefited the cost of making the improvement less that portion assumed by the city. Such assessments are en *335 forced proportional contributions of a somewhat special kind, made in invitum by virtue of legislative authority conferred upon the municipality for that purpose, upon such terms and conditions as the general assembly, within constitutional limits, sees fit to impose. Sargent v. Tuttle, 67 Conn., 162. If the assessment proves insufficient to pay for the improvement, the city may, under the provisions of Section 3909, General Code, make an additional pro rata assessment to supply the deficiency, and under Section 3902, to which we shall refer later, a reassessment may be made. As no contractual obligation in the making of an assessment is involved, the application of the rule which is insisted upon is, therefore, denied.
But there is brought to our attention by the answer and agreed statement of facts, whether properly so or not it is not necessary to decide, the fact that a number of property owners had paid their assessments in full before this action was brought, and the further fact that one corner lot had been sold and the purchaser, as part consideration, had assumed a certain portion of the assessment as made by the city. It is insisted, therefore, that certain rights had vested and that the parties had acted in reference'to the assessment made by council. But we think counsel have failed to give effect to the provisions of Section 3902, which reads:
“When it appears to the council that a special assessment is invalid, by reason of informality or irregularity in the proceedings, or when an assess- ' ment is adjudged to be illegal, by a court of com *336 petent jurisdiction, the council may order a reassessment, whether the improvement has been made or not.”
In view of these provisions we do not see upon what theory a property owner can be said to acquire a vested right growing out of an assessment. When he pays his assessment in full he does so charged with knowledge of the provisions of this section. When property is conveyed both the grantor .and the grantee are charged with knowledge that there may be a reassessment of the property in case the original assessment is held to be illegal.
Section 22, General Code, is called to our attention. This section validates the acts of the municipality acting in pursuance of a statute, the acts being valid according to judicial construction and adjudication at the time the action was had by the municipality, notwithstanding a subsequent change of . such rule of judicial construction and adjudication with réspect to other similar legislation. This section, as w.e view it, is practically a statutory enactment of the common-law rule which we have been considering, and an examination of it will disclose the fact that it proceeds upon the theory that rights have vested and that loans or other things of value have been effected or acquired, or expenditures have been made by third persons, in reliance upon the construction or adjudication of the statutes. It is to be observed that the subject of assessments is not dealt with in this statute. Moreover, it is. inapplicable in view of the express provisions .of Section 3902, supra,. which specially deals with this subject. An assessment is not irrev *337 ocable, but is subject to change. The statutes confer a continuing power upon council which is not exhausted until an assessment is made which can be enforced. Brevoort v. Detroit, 24 Mich., 322.
Cincinnati v. Seasongood, 46 Ohio St., 296, is cited by counsel and is claimed to be decisive of the question involved here. It was held in that case that a municipal corporation having, through its proper agents and officers, passed a resolution and ordinance to improve a street, in its assessment of the cost and expenses of the improvement upon the abutting property, it should be governed by the law in force at the time of the passage of its improvement ordinance with respect to the manner of assessment and the rights and liabilities of the owners of abutting property. It is true that Judge Dick-man, in the course of his opinion, states that the property owners acquired a vested right under the act in force at the time of the passage of the improvement ordinance. It is also said that the conclusion reached by the court was without regard to the question whether a contract obligation arose between the property owners and the city. In the instant case this question is controlling. Counsel for the city base their contention upon the ground that the relations existing between the city and the lot owners affected were contractual and that the assessment levied was in the nature of a vested right. This position is not tenable in view of the fact that an assessment is not in the nature of a contract, and no vested rights were acquired in view of the provisions of Section 3902.
*338 In Shoemaker et al. v. City of Cincinnati, 68 Ohio St., 603, a property owner sought to invalidate an assessment made against his property under a statute which had been adjudged valid by this court and afterwards similar legislation had been held by it to be in violation of the constitution. The court denied relief. It appears from the record in that case that city bonds had been issued to pay for the improvement, and such as had not béen paid were held by innocent investors, and property rights and liabilities had grown up and become fixed beyond change on the faith of the decision of the court. These conditions do not present themselves here and the holding in that case is, therefore, not in point.
Being of the opinion that the relation existing between the city and the lot owner is not contractual in its nature and that Section 28 of Article II of the Constitution, prohibiting the enactment of laws impairing the obligation of contracts, is, therefore, inapplicable, and further, that by force of Section 3902 no rights were acquired by the property owners which were complete and consummate, the defendant in error was entitled to the relief given him by the court of appeals.

Judgment affirmed.

Nichols, C. J., Johnson, Wanamaker, Jones and Matthias, JJ., concur.