[Civil No. 2716. Filed March 4, 1929.]

[275 Pac. 5.]

FRANK B. WOOD and CECIL WOOD, His Wife, J. M. McINTYRE and MARTIN GOLD, Appellants, v. PHOENIX–TEMPE STONE COMPANY, a Corporation, THE LIGHTNING DELIVERY COMPANY, a Corporation, and CITY OF PHOENIX, a Municipal Corporation, Appellees.

See Appeal and Error, 3 **C. J.**, sec. 1470, p. 1337, n. 11; 4 **C. J.**, sec. 2728, p. 778, n. 75.

Municipal Corporations, 44 **C. J.**, sec. 3054, p. 626, n. 35, sec. 3711, p. 945, n. 48, sec. 3714, p. 946, n. 69.

Mr. Thomas W. Nealon, for Appellants.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellee Phoenix-Tempe Stone Company.

LOCKWOOD, C. J.—This is an appeal from a judgment of the superior court of Maricopa county which in effect refused to enjoin the City of Phoenix

from proceeding with the paving of Jackson Street, between Fourth and Fifth Streets. The facts involved in the case are substantially as follows:

Appellants are the owners of certain realty fronting south on said street, at present occupied by residences. The only means of entrance to and exit from said realty is Jackson Street, or the alley in the rear of the property. That portion of the City of Phoenix in the general vicinity of appellant's property is in a district which, although at present partially residential, is rapidly becoming a manufacturing and warehouse district. A railroad track runs down the center of the street, and up to the inception of these proceedings a certain portion of the street in front of appellants' premises had been used exclusively for a sidewalk, being separated from that portion used as a driveway by a ditch and row of shade trees.

The Lightning Delivery Company, a corporation, owns 250 feet fronting north on the street, and about October 13th filed with the city commission of Phoenix a petition for the paving of the portion of Jackson Street above referred to. On that day the commission adopted a resolution of intention to pave such street from the property line on the north to the property line on the south, thus destroying the shade trees, the ditch, and the sidewalk above mentioned, and theretofore existing, and leaving Jackson Street in that block without any sidewalk, as distinct from the general surface of the street. The commission proceeded in accordance with the statutes covering municipal paving, and on November 24th the contract for the paving was awarded to the Phoenix-Tempe Stone Company, one of the appellees herein.

About December 10th for the first time appellants had actual notice of the contemplated paving. Promptly thereafter they presented a written protest against it to the commission, signed by the owners of 350 out of 600 feet of the property abutting thereon.

The petition was referred to the city manager for investigation, and on December 29th, appellants being represented before the commission by counsel, a resolution was adopted to lay over the matter for a week, "to see the contractor, and see if he will relinquish his rights in the matter." Apparently the contractor refused to relinquish any rights which it possessed, for on January 5th the city executed a formal contract with it in accordance with its bid, refusing any further hearing to appellants. On February 10th they brought suit, seeking to enjoin the commission and contractor from proceeding with the work. The matter was heard before the court sitting without a jury, and judgment was rendered against appellants and in favor of the city and contractor, from which judgment this appeal has been taken.

There are four assignments of error set up in appellants' brief, and seven propositions of law stated thereunder. We think, for the purposes of this case, they can be reduced to two. The first is that an abutting property owner is entitled to a reasonable space for sidewalks in the street on which his property faces, and the city cannot deprive him of that right, except by the exercise of the right of eminent domain. The other is that the Session Laws of the various legislatures in regard to municipal paving and the notice to be given to the owners of lands abutting such proposed paving passed since 1913 are unconstitutional. We will consider these propositions in their order.

The first point for us to determine in discussing this question is: What are the rights of a property owner upon an abutting public street? It is conceded without question that he has the right of ingress to and egress from his lot over and by means of the adjacent portion of the street, whether he owns the fee to the center of the street, leaving the public

merely an easement of passage, or whether the title to the highway is vested in the public, leaving merely an easement in the owner. 44 C. J. 943. There is a sharp and irreconcilable conflict in the authorities, however, as to whether such ingress and egress necessarily includes the right to a sidewalk, as distinct from the general body of the street, or whether it is merely to the street as a whole. The leading cases supporting the former view are those of *Georgetown* v. *Hambrick*, 127 Ky. 43, 128 Am. St. Rep. 333, 13 L. R. A. (N. S.) 1113, 104 S. W. 997, and *Tulsa* v. *Hindman*, 128 Okl. 169, 55 A. L. R. 891, 261 Pac. 910. The vital part of the opinion in the first case reads as follows:

"The street was dedicated for ordinary street purposes, and it must be presumed the parties contemplated it was to be used in the usual way. In ordinary city streets there is a carriageway in the center and sidewalks on the side. The sidewalk is as necessary as the carriageway, and both are equally within the contemplation of the parties in the dedication. The city council, under its power to regulate and control the streets, may fix the width of the carriageway or the sidewalks, or determine how much space shall be given to each; but it cannot say that the whole street shall be used as a carriageway, and that no part of it shall be used as a sidewalk. The owner of the abutting property is entitled to have a reasonable space for sidewalk and the council cannot act arbitrarily. It can determine what is reasonable space, but in so doing it must exercise a fair judgment. If it fails to give a reasonable space for sidewalks and the proof is such as to show arbitrariness, the property holder is not without remedy."

In the second case the court reviews all the decisions bearing on the point, both *pro* and *con*, and says:

"According to the actions and proceedings of the various chambers of commerce, civic clubs, safety coun-

cils, and efforts of the newspapers and metropolitan journals the thoughts and efforts of serious men are directed at means of providing additional facilities for pedestrian traffic, instead of abolishing what the people already have. Sidewalks are not only being retained, but footroads, over and under many streets, are being proposed and established. Several cities have already built many of these footways, primarily for the use of children going to and from school. If we are correctly informed, at least one city in Oklahoma is launching the same enterprise.

"We do not intend to say or indicate that the city of Tulsa cannot, under certain conditions, extend its streets to any width it deems necessary. That particular question is not before us. But the city, in extending a street to the extent of wiping out its sidewalk space, must compensate the abutting property owner for the resulting damages."

The opposite view was first expressed in the case of *Brevoort* v. *Detroit*, 24 Mich. 322, wherein Justice COOLEY, speaking for the court, said:

"A second objection is that the paving included those portions of the street before used as sidewalks, and that the sidewalks were in effect abolished, not by direct resolution for that purpose, but indirectly, by ordering the paving. This is claimed to be illegal, but we do not very distinctly perceive the reason why. A street includes the whole width of public way; it is customary in a city to set apart a portion of it for foot passengers; but there is no rule of law absolutely requiring this, and in many parts of an incorporated town it might be needless. We have no doubt the whole matter was within the control of the council."

A similar question was considered by the Supreme Judicial Court of Massachusetts in 1886, in the case of *Attorney General* v. *Boston*, 142 Mass. 200, 7 N. E. 722, in which it was held as follows:

"It is urged that this power to construct sidewalks, even if it be discretionary, cannot be treated as giving authority to remove or dispense with them where they

already exist. To hold thus would be to give too limited an interpretation to the statute. The general power to construct sidewalks or not in all streets, whether macadamized or paved, must be construed as one which deals with the whole subject, and places it within the control of the local authorities. It authorizes them, in their discretion, not merely to construct them or not where they do not now exist, but to remove or dispense with them where they do exist, if in their judgment it is desirable."

Following this came the decision in North Carolina of the case of *Hester* v. *Durham Traction Co.,* 138 N C. 288, 1 L. R. A. (N. S.) 981, 50 S. E. 711, wherein the court said:

"The sidewalk is simply a part of the street which the town authorities have set apart for the use of pedestrians. 27 Am. & Eng. Enc. Law, 2d Ed., p. 103; *Ottawa* v. *Spencer,* 40 Ill. 217; *Chicago* v. *O'Brien,* 111 Ill. 532, 53 Am. Rep. 640. The abutting proprietor has no more right in the sidewalk than in the roadway. His rights are simply that the street, including roadway and sidewalk, shall not be closed or obstructed so as to impair ingress or egress to his lot by himself and those whom he invites there for trade or other purposes. *Moose* v. *Carson,* 104 N. C. 431, 17 Am. St. Rep. 681, 7 L. R. A. 548, 10 S. E. 689; *White* v. *Northwestern North Carolina R. Co.,* 113 N. C. 610, 37 Am. St. Rep. 639, 22 L. R. A. 627, 18 S. E. 330. As said in *State* v. *Higgs,* 126 N. C. 1014, 48 L. R. A. 446, 35 S. E. 473: 'An abutting owner to a street and sidewalk has an easement in his frontage which he may use in subordination to the superior rights of the public.' Sidewalks are of modern origin. Anciently they were unknown, as they still are in Eastern countries, and in perhaps a majority of the towns and villages of Europe. In the absence of statutes, a town is not required to construct a sidewalk."

This case was followed in substance by the same court in *Crotts* v. *City of Winston-Salem,* 170 N. C.

24, L. R. A. 1916B 1049, 86 S. E. 792. Shortly thereafter the same question arose in Texas, and it was held in *Jones* v. *City of Houston,* (Tex. Civ. App.) 188 S. W. 688, that municipalities in that state were not compelled to provide a space for sidewalks, but in the exercise of their discretion might appropriate the entire dedicated street for driveway purposes, and that the courts would not interfere with the reasonable exercise of this discretion. This case was followed in *Watland* v. *Whitham & Co.,* (Tex. Civ. App.) 261 S. W. 387.

We are of the opinion, upon reviewing these authorities and the reasoning thereof, that the right of ingress and egress of the abutting property owner is not to any particular manner or method, but that a municipality, granted under its charter the general supervision of streets and sidewalks, may exercise a reasonable discretion in determining how the right shall be exercised. The changing conditions of business and traffic necessarily require this. What might be an unreasonable system in an exclusive residential district might be the very best possible for a manufacturing district, and *vice versa.* Such being the case, no property right exists in the abutting property owner to an easement for a sidewalk as distinct from a driveway, and it is not an unconstitutional taking or damaging of property if the municipality, in the exercise of a reasonable discretion, fails to provide a sidewalk, or abolishes one already existing.

We must assume that the trial court found facts sufficient to support the judgment. *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.,* 29 Ariz. 23, 239 Pac. 290; *First Baptist Church* v. *Connor,* 30 Ariz. 234, 245 Pac. 932. Such facts necessarily included a finding that the exercise of the discretion was reasonable, and, in the absence of an assignment of error that the evidence does not support the assumed findings, we cannot review this question. This

disposes of the first four propositions of law advanced by appellants.

The next proposition involves the alleged unconstitutionality of the session laws. The general rule of law in regard to the notice to be given to property owners of a proposed improvement is well stated in *Millikan* v. *Crail,* 177 Ind. 426, 98 N. E. 291:

"While the property owner must have notice at some time before the final assessment is made, in order to give the tribunal, vested with jurisdiction of the subject-matter, jurisdiction over his person and property, and so meet the constitutional requirements of due process of law, it is not required that he shall be notified of the intention to make the improvement nor of the preliminary resolution. Neither is he entitled to notice of every intermediate step in the proceeding leading to an assessment against his property. It is sufficient if notice is given him before the assessment becomes final and conclusive."

We think the statutes complained of are constitutional so far, at least, as the points raised are concerned. *Collins* v. *City of Phoenix,* (C. C. A.) 26 Fed. (2d) 753; *United States Fidelity & Guaranty Co.* v. *California-Arizona Construction Co.,* 21 Ariz. 172, 186 Pac. 502. The question as to whether the benefits exceeded the assessed cost of the improvement is not before us, as it is not within the issues made by the pleadings and evidence.

The judgment of the superior court of Maricopa county is affirmed.

McALISTER and ROSS, JJ., concur.