### ATTORNEY GENERAL *vs.* CITY OF BOSTON & others.

Suffolk.     March 17. — July 1, 1886.     W. ALLEN & HOLMES, JJ., absent.

Under the Pub. Sts. *c.* 50, § 22, giving city authorities the power, in their discretion, to construct sidewalks, they may remove a sidewalk bordering on a paved street.

It is competent for the board of aldermen of the city of Boston to pass an order, directing the superintendent of streets to remove a sidewalk bordering on a paved street; and such order is not "executive" or "administrative," within the meaning of the St. of 1885, *c.* 266, § 6, vesting the "executive" power of the city government in the mayor, "to be exercised through the several officers and boards of the city in their respective departments, under his general supervision and control," and giving to such officers and boards, in their respective departments, "the direction and control of all the executive and administrative business of said city."

The board of aldermen of the city of Boston passed an order, directing the super-
intendent of streets to remove a sidewalk on a paved street within a specified
time, and to pave that portion of the street covered by the sidewalk so as to
conform to the adjoining part of the street, "the expense thereof to be charged
to the appropriation for paving." There had been an appropriation for the
paving department, at the beginning of the year, of a certain sum for the ob-
jects and purposes explained in the recommendations of the committee on pav-
ing, which included new work on streets already laid out and on those which
might be petitioned for, and for repairs and maintenance of streets and roads.
The St. of 1885, *c.* 266, § 6, provided that "no expenditure shall be made nor
liability incurred for any purpose beyond the appropriation duly made there-
for." *Held,* that the order was valid.

INFORMATION IN EQUITY, at the relation of owners of two
estates in Boylston Street in the city of Boston, to restrain the
city, its officers and agents, from enforcing an order, passed by
the board of aldermen on August 3, 1885, as follows: "Whereas
in the judgment of the board it will be most conducive to the
convenience and interest of the city to remove the sidewalk on
Boylston Street adjoining the Common, it is therefore ordered
that the superintendent of streets be directed to remove said side-
walk at the expiration of fifteen days from the passage of this
order, and to pave that portion of the street now covered by said
walk so as to conform to the adjoining part of said street, the
expense thereof to be charged to the appropriation for paving."

The defendants demurred to the information, for want of
equity. Hearing before *C. Allen,* J., who reserved the case for
the consideration of the full court. The facts appear in the
opinion.

*G. S. Hale,* for the plaintiff.

*A. J. Bailey,* for the defendants.

DEVENS, J. The St. of 1799, *c.* 31, § 1, provided that all
streets in Boston shall be paved "agreeable to the following
regulations, viz. The footpath or walk on each side of every
street shall be of the breadth of one sixth part of the width of
the whole street; and shall be laid or paved with bricks or flat
stones, and secured with a beam or cut stone along the outside
thereof; and the middle or remaining four sixths of every street
shall remain as a passageway for carriages of burthen or pleas-
ure." The same section provided that, in certain cases, "the
breadth of the footwalk, and the ascent and descent, and the
crowning of the pavement in every street, shall be regulated by

the surveyors of highways." The informant contends that this statute is still in force ; and that there exists no power in the city government, or any of its branches, to cause the entire and permanent removal of a sidewalk on any paved street in the city of Boston.

The St. of 1799 does not, in terms, provide that every paved street shall have a sidewalk or footpath on each side thereof, but it does assume, by these regulations, that it will ; and § 2 provides that, when the cartway in any public street is ordered to be paved, the owner of any abutting lot "shall, without delay, at his own cost, cause the footway in front of his ground to be paved with bricks or flat stones, and supported by timber or hewn stones, and kept in repair ; the same to be done under the direction of, and to the approbation of, the surveyors of highways." In case such owner neglects to pave his footway, the surveyors are authorized to do it, and to recover of him the amount thus expended.

The St. of 1831, c. 17, treats the St. of 1799 as in force, and recognizes § 2 thereof as its principal object, by imposing upon the abutters upon macadamized streets in the city of Boston the same liabilities as would be created under the act of 1799, and the acts in addition thereto, by the paving of the street.

The St. of 1833, c. 128, provides that the city council of Boston "may, from time to time, by any ordinance or ordinances, empower the surveyors of highways of said city so to regulate the width and height of the sidewalks . . . . as shall, in the judgment of said surveyors, be most conducive to the convenience and interest of said city, any law of the Commonwealth to the contrary notwithstanding." It further provides that the city council may "empower said surveyors to accept such sidewalks, after the same shall be put in good and perfect repair by the abutters . . . . and . . . . relinquished in writing to the said city, . . . . and may also order that, after such relinquishment, such sidewalks may be maintained at the expense of said city."

The power of regulating the width and height of the sidewalks is given as a part of the power of accepting the same for the city when put by the abutter in good and perfect repair, and when also relinquished to the city they may thenceforth be maintained at its expense. The act does not make it the duty of the city,

through the surveyors, to accept the sidewalk prepared by the abutter on his relinquishment of it, nor does it compel the relinquishment by the abutter. Its object was to place within the control of the city the whole subject, and, under it, if it was not deemed necessary that any sidewalk should be constructed, it was not obliged to accept such sidewalk, and impose the burden upon the city. While the word " regulate," as applied to the sidewalks, may often imply the existence of the thing to be regulated, such is not an absolutely necessary construction. The power to regulate the use of the streets of a city implies the power to prohibit the use of them under certain circumstances. *Commonwealth* v. *Stodder*, 2 Cush. 562, 571. *Union Railway* v. *Mayor & Aldermen of Cambridge*, 11 Allen, 287, 294.

If the validity of the order here in question depended alone on the three statutes above cited, it may be doubted whether it could be held that they rendered it obligatory on the city, whenever a way was paved or macadamized, to provide it with sidewalks or footways, if, in the judgment of the authorities, these were not required.

These statutes, which related only to the city of Boston, were repealed by the St. of 1872, *c.* 303, (Pub. Sts, *c.* 50, § 22,) so far as they are inconsistent therewith. The St. of 1872 was a general statute, applicable to all cities of the Commonwealth which should accept the same. It was accepted by the city of Boston on May 21, 1872, and was consequently in force when the order in the case at bar was passed. The previous statutes which we have referred to as a part of the history of legislation on this subject had contemplated the grading and construction of sidewalks by the abutters. This provides for the construction of sidewalks by the city " as the public convenience may require," in such form and with such materials as it may deem proper, or for the completion of any partially constructed sidewalk to be thereafter maintained by the city, and for the assessment of the expenditure upon the abutter, deduction being made for previous assessments paid by him. There is nothing in this act which renders it obligatory upon any city accepting it to construct sidewalks upon any of its ways. Whether this shall be done is left to the discretion of its lawful authorities. If any statute previously existed compelling the construction of

a sidewalk in every paved street, this provision would be clearly inconsistent with the discretionary power given by this act, so far certainly as streets are concerned which up to that time had not been provided with sidewalks. It is urged that this power to construct sidewalks, even if it be discretionary, cannot be treated as giving authority to remove or dispense with them where they already exist. To hold thus would be to give too limited an interpretation to the statute. The general power to construct sidewalks in all streets or not, whether macadamized or paved, must be construed as one which deals with the whole subject, and places it within the control of the local authorities. It authorizes them, in their discretion, not merely to construct them or not where they do not now exist, but to remove or dispense with them where they do exist, if in their judgment it is desirable.

It is to be considered, if this is so, whether the order to remove the sidewalk here in question has been passed by the proper authority. That the aldermen had formerly the powers of surveyors of highways appears by the St. of 1854, c. 448, § 41. Under the St. of 1885, c. 266, § 6, the executive power of the city government is vested in the mayor, " to be exercised through the several officers and boards of the city in their respective departments, under his general supervision and control; " and the contention of the informant is, that the power to dispense with or remove the sidewalk is " executive" or " administrative" strictly, both these words being used in the statute. But the power to determine whether public convenience requires the construction of a sidewalk, and equally so its removal, involves the exercise of judgment not administrative only, and the exercise of the power is judicial in its character, although expressed in a legislative form. The power so to repair a highway that it shall be fit for travel within the lines marked out for travel as established, is executive; but that of determining what shall be the lines of travel is legislative. The board of aldermen may not be able to control executive action of the mayor by prescribing the time within which the removal shall take place; but this portion of the order may fairly be interpreted as imposing upon the proper officer, the superintendent of streets, acting under his official superior, the mayor, the duty of doing it within the time

named, if it can be so done with proper regard to other executive duties of a similar character.

The remaining question is whether the board of aldermen might pass such an order without a more specific appropriation than the general appropriation for paving, made at the beginning of the year, before action had been had or taken as to this sidewalk, to which appropriation the order directed the expenditure to be charged. The St. of 1885, *c.* 266, § 6, provides that "no expenditure shall be made nor liability incurred for any purpose beyond the appropriation duly made therefor." An appropriation had been made for the paving department of $800,000, for the objects and purposes explained in the recommendations of the committee on paving. These included new work on streets already laid out, and on those which might be petitioned for, and for repairs and maintenance of streets and roads. If the removal of the sidewalk and also the repaving of that portion of the street were necessary, they were acts in the nature of a repair of the way. The appropriation, as passed, contemplated contingencies, the exact nature and character of which could not be foreseen; and when such a contingency occurred, the expenditure which became necessary might properly be assigned to it. It is not suggested that the appropriation did not afford ample means to meet the expenditure, but only that there was no more than sufficient money on hand "to do the customary and necessary work in other respects of the department of paving." If it shall be found hereafter that the appropriation is exhausted before the work in question can properly be done, the statutory provision forbidding expenditure beyond the appropriation must be observed, but the order for this work is not, on that account, invalid. *Petition dismissed.*