The plaintiff owns the lot which occupies the (289) apex of the acute angle which lies at the junction of Main and Chapel Hill streets in the city of Durham. The defendant, by permission of the board of aldermen of the city, laid a curved track to pass from one street to the other, as per below diagram.
This track was located and laid under the direction of the street commissioner, who made his report to the board of aldermen, the expenses of the work being borne by the defendant. This curved track was used in the summer, in the evenings from 6:30 until the cars went to the barn for the night, about 11 or 11:30. The curve was laid for the convenience of the public in going from West Durham to the Park and returning. Prior to its being laid, the passengers had to be transferred at that point (known as "Five Points") or else the West Durham car had to go down Main Street, and, reversing fenders, *Page 208 
seats, and trolley, run back up Chapel Hill Street. To avoid this great inconvenience to the public, the board of aldermen authorized this curve to be put in to run round the sharp angle at the junction of the (290) two streets. Only passenger cars are used, no freight cars. On Main Street the nearest rail of the track is 15 1/2 feet from the outside edge of the sidewalk and it is 13 1/2 feet on Chapel Hill Street from
[EDITORS' NOTE: THE DIAGRAM IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 138 N.C. 208.]
the nearest rail to curb. The curved track in rounding the point does not touch the sidewalk, but at the southeast corner, as the curve enters Chapel Hill Street, the edge of the car for a few inches of distance is slightly over the edge of the sidewalk. The complaint avers that the rear of the car does this; but this is evidently a mistake, for as the concave side of the curve is towards the plaintiff's lot, the rear of the car necessarily swings outward, not in. It is also in evidence that at the southeast corner of the sidewalk the cross-ties, extending 18 inches further than the rail, have their extreme ends under the sidewalk. They are not above the surface, but under, and as the cross-ties thus embedded, out of sight, cannot impede the use of the sidewalk, which is the property of the city, the plaintiff can have no possible ground of action on that account. The sidewalk on Main Street is 10 feet wide and that on Chapel Hill Street is 8 feet. The southeast corner where the passing car "overhangs" is diagonally distant about 11 feet from the southeast corner of the plaintiff's lot.
The plaintiff's cause of action depends upon whether he is injured in the use of his property by the slight overhanging of the pavement by the car for an instant of time as it passes the southeast corner where the curve enters (or leaves) Chapel Hill Street. The charter of the *Page 209 
city of Durham shows that, as usual, the city has the same right and title to the sidewalks as to the rest of its streets. The defendant's track was laid under authority of its charter, "permission being first had" of the city as required. The construction of a street passenger railway "does not impose any additional servitude upon the property fronting on the street so occupied." Merrick v. R. R., 118 N.C. 1081, citing R. R.v. Montgomery, 167 Pa. St., 70, 27 L.R.A., 766; Kennelly v.Jersey City, 26 L.R.A., 281; Elliott R. and S., 558; Cooley (291) Const. Lim., 683; Dillon Mun. Corp. (4 Ed.), sec. 723. To the same purport, R. R. v. R. R., 120 N.C. 523; Smith v. Goldsboro,121 N.C. 350; Tel. Co. v. R. R., 93 Tenn. 492, 27 L.R.A., 239; R. R. v. Higbee (Wis.), 51 L.R.A., 923; Booth Street Railways, sec. 83; Joyce on Elec., secs. 336, 339, 341; 27 A. E. Enc. (2 Ed.), 27-29.
The authorities with singular uniformity concur that it is "now well settled that the use of the streets in cities or villages for a street railway is one of the ordinary purposes for which such streets and highways may be used, and does not impose an additional burden or servitude so as to entitle the abutting property owner as a matter of right to compensation before such use can be made. . . . This rule is generally recognized, irrespective of the question whether, in the original laying out of the street, a mere easement was taken, leaving the fee simple in the abutting property." The rights, powers, and liability of the municipality extend equally to the sidewalk as to the roadway, for both are parts of the street. Tate v. Greensboro, 114 N.C. 392; 2 Smith Mun. Corp., sec. 1304; Elliott, supra, sec. 20. This is recognized by The Code, sec. 3803, and by the courts, which hold towns and cities to the same degree of liability for failure to repair sidewalks as to repair the other part of the street.Bunch v. Edenton, 90 N.C. 431; Russell v. Monroe, 116 N.C. 726; Neal v.Marion, 129 N.C. 345; Wolfe v. Pearson, 114 N.C. 621; 2 Dillon, supra, sec. 780, note 1, secs. 1008 and 1012.
In Bunch v. Edenton, supra, "It was the positive duty of the corporate authorities of the town to keep the streets, including the sidewalks, in proper repair." The charter of Durham gives the same powers over sidewalks and imposes the same liabilities upon the city for failure to repair the sidewalks as in regard to the other part of the street. In R. R. v. Higbee, 51 L.R.A., 929, it is said: "There (292) is no limit to the public right to use a street, and every part of it, so long as that use is in aid of public travel thereon and does not unnecessarily interfere with the common use of the way by ordinary modes of travel, and is no substantial impairment of private rights of property."
The complaint avers three grounds of damage: *Page 210 
1. That 2 inches of the plaintiff's lot is covered by the defendant's track. But the evidence shows that the rail at the nearest point of the curve is 3 inches outside the curbing to the sidewalk and the pleadings admit that no part of the plaintiff's lot (inside the sidewalk) is overhung by the car in passing.
2. That vehicles have almost no approach to the lot. But the evidence is that between the outer edge of the sidewalk and the defendant's nearest rail there is 15 1/2 feet on Main Street and 13 1/2 feet on Chapel Hill Street. It is only at the apex, at the toe of the boot, so to speak, that the track approximates the outer edge of the sidewalk. There is ample evidence that the curve does not interfere with carriages standing on either street in front of the plaintiff's lot. As the "toe" of the plaintiff's lot is only 7 feet 7 inches, and being an acute angle it would be barely 4 feet perhaps at the edge of the sidewalk, a carriage could not stand there. The "toe" of the sidewalk (the cross sidewalk) is 22 feet 5 1/4 inches, but over 18 feet of this is "frontage," not of the plaintiff's lot, but caused by continuation of the two sidewalks, for if the plaintiff's lot were extended to the eastern edge of the sidewalk at that place, it would be narrowed, as already said, to a point with almost no front at all.
3. That cars frequently run off the track at that point. The only evidence is that they did run off the track three or four times when the curve was first used. There is no evidence of any injury to the plaintiff from this cause.
(293) The sidewalk is simply a part of the street which the town authorities have set apart for the use of pedestrians. 27 A. E. Enc. (2 Ed.), 103; Ottawa v. Spencer, 40 Ill. 217 Chicago v. O'Brien, 53 Am. Rep., 640. The abutting proprietor has no more right in the sidewalk than in the roadway. His rights are simply that the street (including roadway and sidewalk) shall not be closed or obstructed so as to impair ingress or egress to his lot by himself and those whom he invites there for trade or other purposes. Moose v. Carson, 104 N.C. 431; White v. R. R.,113 N.C. 610. As said in S. v. Higgs, 126 N.C. 1014: "An abutting owner to a street and sidewalk has an easement in his frontage which he may use in subordination to the superior rights of the public." Sidewalks are of modern origin. Anciently they were unknown, as they still are in Eastern countries and in perhaps a majority of the towns and villages of Europe. In the absence of a statute, a town is not required to construct a sidewalk.Attorney-General v. Boston, 142 Mass. 200. It is for the town to prescribe the width of the sidewalk. In the absence of statutory restriction it may widen, narrow, or even remove a sidewalk already established.Attorney-General v. Boston, supra. To widen a sidewalk narrows the roadway. To *Page 211 
widen the roadway narrows the sidewalk. The proportion of the street to be preserved for pedestrians and vehicles respectively is in the sound discretion of the town authorities. Here, they might narrow the sidewalk at the "toe" of the plaintiff's lot by drawing in its outer edge, or they might make the outer-edge curving to correspond with the curve of the car track, and thus prevent the car overhanging the edge of the sidewalk. If so, they may, so far as the plaintiff is concerned, let the car overhang the corner instead of cutting off that corner from the sidewalk. If the sidewalk were so far narrowed as to impede the circulation of passers-by on foot, so as to hinder the ingress and egress to the plaintiff's building, he would have cause of complaint; but such is not the case here. If the overhanging of the car were to (294) injure any one walking on the sidewalk, such person might possibly have a cause of action against the city or the defendant, for the establishment and maintenance of the sidewalk are an invitation to pedestrians to walk anywhere thereon; but the plaintiff would not be injured thereby in his property rights to the lot, which is this cause of action. As to pedestrians, the city can protect itself by reducing the width of the sidewalk at the point, or, by condemning a few inches of the plaintiff's lot, it could make a cut-off at the outer corner without reducing the width of the sidewalk; but it should be remembered that that small space, occasionally overhung by a passing car, is at a corner of the street, and therefore the sidewalk, measured diagonally, is wider there than elsewhere, and would still be wider, though the little space "overhung" were cut off from the sidewalk, or the outer curbing of the sidewalk were drawn in and made curving at that point.
In holding that the acts of the defendant complained of by the plaintiff were not unlawful and did not constitute a cause of action, there was
No error.
Cited: S. v. Godwin, 145 N.C. 464; Butler v. Tobacco Co., 152 N.C. 420;Smith v. Hendersonville, ib., 620; Green v. Miller, 161 N.C. 30;Sexton v. Elizabeth City, 169 N.C. 390; Crotts v. Winston, 170 N.C. 28;Bennett v. R. R., ib., 393; Kirkpatrick v. Traction Co., ib., 478. *Page 212 
(295)