### JONES v. CITY OF HOUSTON et al.
### (No. 7348.)

(Court of Civil Appeals of Texas. Galveston. July 28, 1916.)

1. MUNICIPAL CORPORATIONS ☞649—STREETS —PUBLIC IMPROVEMENTS—MAINTENANCE OF SIDEWALKS.

Under Houston City Charter, art. 2, § 4, empowering the city to lay out, establish, open, alter, widen, pave, supervise, and maintain streets, alleys, sidewalks, and squares, and to vacate and close the same, the city could regulate the width of sidewalks, and altogether abolish them if traffic should warrant, unless some private right protected by Constitution, is impaired.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1423; Dec. Dig. ☞ 649.]

2. DEDICATION ☞58—STREETS—PUBLIC IMPROVEMENTS—MAINTENANCE OF SIDEWALKS.

A municipality authorized by charter to lay out, regulate, widen, etc., its streets and sidewalks is not bound by dedication to maintain sidewalks, but may appropriate the street from time to time to such uses as are conducive to the public good, and a court of equity will not interfere with the exercise of its discretion in that respect.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 100; Dec. Dig. ☞58.]

3. CONSTITUTIONAL LAW ☞289—MUNICIPAL CORPORATIONS ☞290 — STREETS — PUBLIC IMPROVEMENTS — MAINTENANCE OF SIDEWALKS — CONSTITUTIONAL LAW — DUE PROCESS OF LAW.

Houston City Charter, art. 4a, § 1, defining improvements, section 5, providing for filing of petition for improvements, and section 7 providing for a hearing on the question of penalties, and section 8 providing that within ten days after such hearing a contest may be instituted but any person failing to institute suit within ten days shall be forever barred from attacking either the assessment or the validity of any proceeding with reference to the improvements, affords due process of law by the hearing, and one who fails to sue within ten days cannot avoid the assessment.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 870; Dec. Dig. ☞289; Municipal Corporations, Cent. Dig. §§ 763, 764; Dec. Dig. ☞290.]

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Injunction by Charles P. Jones against the City of Houston and others. From an interlocutory order denying temporary injunction, the complainant appeals. Affirmed.

LANE, J. This is an appeal from an interlocutory order entered in chambers by the judge of the Eightieth judicial district court, refusing to grant the temporary injunction prayed for by plaintiff. Said prayer sought to enjoin the city of Houston and the Eureka Paving Company from proceeding with the improvement of Main street by preparing same for and laying upon the same a pavement 60 feet wide with an esplanade, or parkway, in the center and driveways on each side of same. The case was submitted to the court below on bill and answer, the pleadings developing a state of undisputed facts, which we briefly summarize: That plaintiff is the abutting owner of a piece of property fronting on Main street in the city of Houston, a part of what is known as Block 1, Kirby Main Street addition to said city, plaintiff's said property having a frontage on Main street of 80 feet. That Main street through said addition was dedicated by John H. Kirby, who laid out the same, to be a street 60 feet in width. That said dedication was the ordinary dedication by map and plat, and the same dedicated to the city of Houston a street 60 feet in width. from property line to property line. That after the said street was dedicated the city of Houston appropriated for the purpose of a road or driveway a space of 35 feet, and constructed, or caused to be constructed, upon same a brick pavement, leaving on each side of said road or driveway, a space of 12½ feet not appropriated for driveway, and about one year prior to the bringing of this suit appellant was compelled by the city of Houston to, and he did, construct a 5-foot cement sidewalk on Main street upon the space not appropriated for roadway for vehicles, at a cost to him of $51.30. Thereafterwards, on or about the 24th day of January, 1916, a petition in regular and due form under the terms of article 4a of the charter of the city of Houston, asking for the pavement of Main street from the north property line of McKinney avenue to the end of the brick pavement on said street, which said limits included the street in front of plaintiff's property, was filed with the city council of the city of Houston, and was by the said council accepted and received by resolution passed on the same day. That under the terms of said petition and resolution the said street in front of plaintiff's property was to be improved by placing upon the same an esplanade 16 feet in width in the center thereof, and constructing a paved roadway on each side of the esplanade 20 feet in width, thus requiring and taking for said improvement the entire 80 feet of the street. That said petition was duly accepted by the city council, the procedure designated and required by article 4a of the city charter was undertaken and complied with, and on the 17th day of April, 1916, the city of Houston, under the terms of said charter, duly entered into a contract with the Eureka Paving Company to pave the said street with

a surface of asphaltic concrete, and thereafter, also in accordance with said charter, due notice of a hearing for the purpose of determining the special benefits to plaintiff's and other abutting property as provided therein was given, the same to be heard on the 18th day of May, 1916, at the city hall in Houston, Tex. At said hearing all the proceedings in connection with and leading up to the improvements were, by the city council, by appropriate legislative acts, duly confirmed, and the property owners were duly assessed with their portion of the cost which in law, under the provisions of the charter, was assessable against them. Of each and all of the proceedings of the city council plaintiff had full notice and knowledge, and appeared in person at the hearing on benefits, as provided in section 7, art. 4a, of said charter, but did not file with the council any objection to the validity of any proceeding with reference to said improvements, as required by said charter, nor did he afterwards institute suit within ten days from the said hearing, as provided in section 8 of the same article, to contest the proceedings underlying the said improvement.

Plaintiff's contention, based upon the above facts, is, briefly stated, that he had a right in law to have a portion of the street in front of his premises maintained as a sidewalk, and that the city had no power, without condemnation, to appropriate the entire space for driveway and esplanade purposes.

[1] It will thus be seen that the determination of the question involves, and is answered by the consideration of, the general rights with reference to all of its streets which the city of Houston has under its charter, and the particular right, with reference to this particular street, which it has acquired by the improvement proceedings instituted under its said charter. Examination of the charter of the city of Houston shows that both by section 4, art. 2, in which it is provided that "the city of Houston shall have power to lay out, establish, open, alter, widen, pave, supervise, maintain," etc., "streets, alleys, sidewalks, squares," etc., "and to vacate and close the same," and by article 4a of the city charter, providing for street improvements by assessment, that the Legislature has conferred upon the city of Houston full and complete control of its streets, avenues, sidewalks, and public places, and the use and improvement of the same, and that this discretion and control is paramount unless some private right protected by the Constitution, is impaired. In this delegation of power to the city of Houston the Legislature has but followed the custom and practice prevailing with reference to such matters since the dawn of modern, or quasi modern municipal governments, it being recognized everywhere that a strong, localized central control of the streets and avenues— the arteries of the life and commerce of a city—must be vested in its common council,

188 S.W.—44

and that any other system of regulation or government would be intolerable.

[2] It stands admitted upon the pleadings of the parties that the property in controversy, in which plaintiff claims that he has a private right to a sidewalk which he is entitled to have protected by injunction, is a part of a regularly dedicated, laid out, and used public street of the city of Houston, and from what has been said it follows that unless plaintiff has some private right which is infringed, the act of the city council in connection with said improvement is an act of legislative discretion, in the performance of the functions of municipal government, with which a court of equity will not interfere.

The first question, then, to be determined is, Is there any requirement imposed from the dedication of a public street by map and plat that there shall always be preserved a sidewalk in front of and appurtenant to the property? Or, stating it another way, Does the act of dedication generally to the public of a street by map and plat compel the city to divide the street into strips of sidewalk and driveway so as to give an abutting owner a private right to enjoin the appropriation of the entire street for roadway purposes? Or can a city, in the exercise of its public discretion, appropriate the whole property to driveway purposes if it deems it necessary and desirable in the public interest free from interference? We think the answer to this question is plain, and rests upon sound reasoning that, with changing conditions of travel and use the city council of a city has the right to adapt and appropriate the street from time to time to such uses as in its judgment would be most conducive to the public good, and that a court of equity will not interfere with the exercise of this discretion.

Nor is authority wanting to sustain this reasoning. In many cases it has been held by the courts of last resort that a city council does not have to provide a space for a sidewalk, but may, in the exercise of its discretion in the control and management of its streets, appropriate the entire dedicated street for driveway purposes, and with this discretion the courts have nothing to do.

In Brevoort v. City of Detroit, 24 Mich. 322, in an opinion by Justice Cooley in which complaint was made of failure to preserve a sidewalk space on a public street, Judge Cooley said:

"A second objection is that the paving included those portions of the street before used as sidewalks, and that the sidewalks were, in effect, abolished, not by direct resolution for that purpose, but indirectly, by ordering the paving. This is claimed to be illegal, but we do not very distinctly perceive the reason why. A street includes the whole width of public way; it is customary in a city to set apart a portion of it for foot passengers; but there is no rule of law absolutely requiring this, and in many parts of an incorporated town it might be needless. We have no doubt the whole matter was within the control of the council."

In Attorney General v. Boston, 142 Mass. 200, 203, 7 N. E. 722, 724, in the Supreme Court of Massachusetts, in which complaint was made, the court said:

"There is nothing in this act which renders it obligatory on any city accepting it to construct sidewalks in any of its ways. Whether this shall be done is left to the discretion of its lawful authorities."

On page 204 of 142 Mass., on page 725 of 7 N. E.. the court again says:

"The general power to construct sidewalks or not on all streets, whether macadamized or paved, must be construed as one which deals with the whole subject, and places it within the control of the local authorities. It authorizes them, not merely to construct them or not at their discretion where they do not now exist, but to remove or to dispense with them where they do exist if, in their judgment, it is desirable."

In the case of Bekkedahl v. Village of Westby, in the Supreme Court of Wisconsin, 140 Wis. 230, 122 N. W. 727, plaintiff complained that the village board had employed one Olsen to construct a curb and gutter for the street improvement so that all that portion of the roadway lying south of the stone curb, including the space occupied by plaintiff's plank sidewalk, will be macadamized and turned into the street for travel, and plaintiff will be deprived of the use thereof for sidewalk and boulevard purposes, and that in order for plaintiff to have a sidewalk he would be compelled to build the same upon his own land. The prayer of the petition was for an injunction restraining the village and contractor from building the curb and gutter further north than the old established curb line for the driveway, and from interfering in any way with the strip of land 5 feet wide which plaintiff was using for a sidewalk. The demurrer to the petition for injunction was sustained. Plaintiff appealed. The court said:

"The principal charge is that defendants are about to interfere with a part of the public street, and that the village board is acting under a petition in so doing. * * * The village having the right to improve the street and it proceeding on a petition so to do, it must be presumed that it is acting lawfully in the absence of any allegation to the contrary. * * * The acts to be done under the contract with the defendant Olsen are to be done within the limits of the street. The general power conferred by law on the village include the power to determine the width of the traveled tract" (citing authorities). "The complaint is barren of facts sufficient to entitle the plaintiff to equitable relief, and therefore the demurrer was properly sustained."

In the case of W. D. Hester v. Durham Traction Company, 138 N. C. 288, 50 S. E. 711, 1 L. R. A. (N. S.) 981, which was a suit to enjoin the laying of a railroad track on a sidewalk, the principles governing sidewalks and the power of city councils over the same are well expressed. In this case the court said:

"The sidewalk is simply a part of the street which the town authorities have set apart for the use of pedestrians. 27 Am. & Eng. Enc. Law (3d Ed.) p. 103; Ottawa v. Spencer, 40 Ill. 217; Chicago v. O'Brien, 111 Ill. 532, 53 Am. Rep. 640. The abutting proprietor has no more right in the sidewalk than in the roadway. His rights are simply that the street, including roadway and sidewalk, shall not be closed or obstructed so as to impair ingress or egress to his lot by himself. * * * Moose v. Carson, 104 N. C. 431, 10 S. E. 689, 7 L. R. A. 548, 17 Am. St. Rep. 681; White v. Northwestern North Carolina R. Co., 113 N. C. 610, 18 S. E. 330, 22 L. R. A. 627, 37 Am. St. Rep. 639. As said in State v. Higgs, 126 N. C. 1014, 35 S. E. 473, 48 L. R. A. 446: 'An abutting owner to a street and sidewalk has an easement in his frontage which he may use in subordination to the superior rights of the public.' Sidewalks are of modern origin. Anciently they were unknown, as they still are in Eastern countries, and in perhaps a majority of the towns and villages of Europe. In the absence of a statute, a town is not required to construct a sidewalk. Atty. Gen. v. Boston, 142 Mass. 200, 7 N. E. 722. It is for the town to prescribe the width of the sidewalk. In the absence of statutory restriction it may widen, narrow, or even remove a sidewalk already established. Id. To widen a sidewalk narrows the roadway. To widen the roadway narrows the sidewalk. The proportion of the street to be preserved for pedestrians and vehicles respectively is in the sound discretion of the town authorities."

[3] The authorities would be sufficient to sustain the action of the court below in refusing the injunction if there were nothing else in the case than a mere ordinance, since they fully recognize the general power of cities to regulate and determine the use to be made of their streets. In this case by a much stronger reason the plaintiff's petition shows on equity, because, in addition to the general powers granted to the city of Houston with reference to its streets, the Legislature had, in article 4a of the city charter, conferred upon the city council authority and jurisdiction to determine both the public necessity and general benefit of the improvements proposed, and the special benefit to the abutting owners along the street, and has also made reasonable provisions for hearing upon the questions involved, together with a timely resort to the courts in the event of dissatisfaction with the ruling of the council.

Article 4a of the charter of the city of Houston provides, among other things, as follows:

Section 1. The term "improvements" as embraced in this article shall include the improvement of any street, avenue, alley, highway, public place, or square or boulevard, or any portion thereof within the city, by filling, grading, raising, or paving or repaving the same with any permanent and durable materials, or by the construction, reconstruction, or repair of curbs and gutters, and shall also include the laying out, opening, widening, narrowing, straightening, or otherwise establishing, defining, or locating any street, avenue, alley, square, public place, or sidewalk.

Section 5 of the same article, after providing for the filing of petition for making all improvements, which petition shall designate the nature of the improvements and the limits within which the same were to be constructed, provides:

"If the said petition or petitions are found by the city council to be in due form, and the signatures thereto are genuine, and if, in the judg-

ment of the city council, under all the circumstances * * * the making of such improvements is for the public good and that the same ought to be made, the city council shall by resolution so declare, and shall order the making of such improvements * * * and the passage of such resolution shall be conclusive of the regularity and legality of said petition, or petitions, and the public necessity and general benefit of such improvements."

Section 7 of said article 4a provides for a hearing upon the question of said benefits, and declares that the city council shall have full power to inquire into and determine all matters necessary to the adjudication of all questions necessary to determine such assessment, and shall determine all matters as shall be just and proper. Any objection to the validity of any proceeding with reference to said improvements shall be filed with the council in writing before said hearing is closed, and shall be deemed waived unless so filed.

Section 8 of the same article provides that at any time within ten days after the close of the said hearing suit may be instituted to contest any of said proceedings, and any person failing to institute suit within ten days shall be forever barred from attacking either said assessment or the validity of any proceeding with reference to said improvements.

Provisions such as these have been discussed in many cases, and have been by the courts uniformly sustained. In their work on Taxation by Assessment, Page and Jones, in section 1003, say:

"If courts, or executive or legislative bodies, are given jurisdiction to determine certain facts, the existence and exercise of such power implies that, in the absence of statutes specifically providing for a review of the action of such body by some other tribunal, such action must be final. Accordingly it is generally held that in an assessment proceeding, the finding of a court or of a council, or of some other legislative, administrative, or executive body, upon matters within the jurisdiction of such body, cannot be attacked collaterally" (citing many authorities)

—and in section 1004 the same authors say:

"Under the statutes in force in many jurisdictions, a council or executive board and the like having jurisdiction conferred by statute, may confirm an assessment and under such circumstances an assessment after confirmation cannot be attacked collaterally."

Again the same authors say in section 1005:

"Under many statutes a finding by executive officers, the city council, commissioners specially chosen for that purpose, and the like, as to certain specified facts is made final, at least if jurisdiction exists, and if such finding is free from fraud. Such statutes are ordinarily held to be valid."

In the case of Hibben v. Smith, 191 U. S. 322, 24 Sup. Ct. 88, 48 L. Ed. 195, that great tribunal said:

"The claim, set up on the part of the lot owner, that there can be no due process of law under which an assessment can be made which does not provide for a review of such assessment and the hearing by a court is not tenable. Assuming the necessity of a hearing before an assessment can be made conclusive, the law may provide for that hearing by the body which levies the assessment, and after such hearing may make the decision of that body conclusive. Although in imposing such assessments the common council or board of trustees may be acting somewhat in a judicial character, yet the foundation of the right to assess exists in the taxing power, and it is not necessary that in imposing an assessment there shall be a hearing before a court provided by the law in order to give validity to such assessment. Due process of law is afforded where there is opportunity to be heard before the body which is to make the assessment, and the Legislature of a state may provide that such hearing shall be conclusive so far as the federal Constitution is concerned."

Under some statutes the owner of the property assessed is given an opportunity to have the validity of the assessment reviewed by proceedings in court. Such an opportunity is held to constitute due process. Security Trust & Safety Vault Company v. City of Lexington, 203 U. S. 323, 27 Sup. Ct. 87, 51 L. Ed. 204.

In this state the same principles are in effect announced in the case of Hutcheson v. Storrie, 92 Tex. 698, 51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884, where the Supreme Court held that there was no due process because no opportunity for a hearing on the question of benefits was provided, the hearing allowed being on matters wholly foreign to the special benefits, so that the ordinance, while apparently giving a hearing, "but kept the promise to the ear while it broke it to the hope," that court in effect holding e converso that had such hearing been provided, there would have been due process. See, also, Wharton County Drainage Dist. No. 1 v. Higbee, 149 S. W. 381, decided by this court.

In the particular case before this court, as we have seen, upon the petition provided in the charter, designating the limits and describing the character of the improvements to be made, the city council, after having passed the resolution, which by the terms of the legislative act is made conclusive as to the wisdom of the improvement, its public necessity and general benefit, under the provisions of the charter, gave full opportunity for hearing on the question of benefits to plaintiff's property. At that hearing the council confirmed the proceedings and established the assessment, and the plaintiff filed no objection, as provided by the charter, nor did he prosecute his suit within the time in the charter limited. Under the express terms of the charter plaintiff is deemed to have waived his objections, and is forever barred from attacking the validity of any proceedings with reference to the improvements.

That the provisions of the city charter furnish to plaintiff full and ample due process we have no doubt, and that the effect of the proceedings is to finally and conclusively determine the wisdom and public necessity of the improvements is equally clear, and it thus appears that the judgment of the court below should be affirmed, both because in the

action of the city council no private right of his has been infringed by making said improvements which a court of equity is called upon to protect, and because all questions as to the correctness and fairness of the improvement have been concluded by a proper tribunal with whose judgment the court of equity in this collateral proceeding has no power to interfere.

The judgment of the court below should therefore be affirmed, and it is so ordered.