CITY OF FT. WORTH et al. v. CAPPS LAND CO. (No. 8879.)

(Court of Civil Appeals of Texas. Ft. Worth. May 11, 1918.)

1. CONSTITUTIONAL LAW ☞316 — "DUE PROCESS OF LAW"—CHARTER PROVISIONS—RIGHT OF APPEAL.

A charter provision for an appeal within 10 days from the order of city commissioners overruling the protest of a property owner to a paving improvement did not constitute a taking of property without due process of law, in violation of Const. art. 1, § 19.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

2. APPEAL AND ERROR ☞2 — RIGHT TO APPEAL—CONSTITUTIONAL LIMITATIONS.

The Legislature cannot take away the right to appeal given by the Constitution, although it may enact rules of procedure limiting the exercise of the right, and may increase, diminish, or change, civil or criminal jurisdiction.

3. MUNICIPAL CORPORATIONS ☞568(2)—PUBLIC IMPROVEMENTS—SUITS TO RECOVER PAYMENT—EVIDENCE.

In proceeding against a property owner to recover the cost of a paving improvement, the certificate of special assessment was admissible as part of the plaintiff's cause of action pleaded.

4. MUNICIPAL CORPORATIONS ☞444—PUBLIC IMPROVEMENTS—SUBMISSION OF ENGINEER'S REPORT.

That a delay of 7 months occurred between the making of a contract for street paving by the board of commissioners and the submission to the board of the engineer's report was not a jurisdictional defect, and did not deprive a property owner of his rights as to notice of the character and extent of the burden to be placed on his property.

5. MUNICIPAL CORPORATIONS ☞295—PUBLIC IMPROVEMENTS — ENTRY OF FORMAL JUDGMENT.

Where a city charter does not provide that a judgment of the board of commissioners of a city providing for a street improvement shall be entered on the minutes, the failure to enter such formal judgment is not conclusive that it was not in fact rendered.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by the City of Ft. Worth and others against the Capps Land Company. From a decree for defendant, plaintiffs appeal. Reversed and remanded.

D. W. Odell, of Ft. Worth, L. M. Dabney, of Dallas, and W. W. Wilkinson, of Ft. Worth, for appellants. Capps, Cantey, Hanger & Short, and Robert Sansom, all of Ft. Worth, for appellee.

BUCK, J. This suit was instituted by appellant, city of Ft. Worth, for the use and benefit of the Texas Bitulithic Company, a private corporation, to recover of appellee, a corporation, a special assessment levied against it by said city of Ft. Worth, in the sum of $1,043.75, its pro rata part of the cost of the paving of Jennings avenue between Berry and Shaw streets, in front of lots 7 to 12, inclusive, in block 35, South

Hemphill Heights addition to the city of Ft. Worth. Appellant, plaintiff below, alleged that it ordered the improvement of said portion of Jennings avenue, that specifications were ordered, prepared, and were approved by the city commissioners, bids advertised for and contract entered into with the Texas Bitulithic Company, notice given to property owners, and an ordinance passed levying and assessing the special assessment against the lots mentioned and against the appellee company; that said work and improvement was completed and was accepted by the city and said assessment became due and payable within 30 days after said acceptance. Defendant answered by general demurrer, by special exceptions, and by general denial, and by various special pleas to the merits. It alleged that William Capps was the president and general manager of defendant corporation, and the only person authorized to transact the business of said defendant; that when approached by a representative of the paving company with a request that he, acting for defendant, sign a petition to the board of commissioners of the city of Ft. Worth requesting that Jennings avenue between Shaw and Berry streets be paved, said Capps refused to sign said petition, and advised said representative of the paving company that he did not deem it advisable to have the street in front of the lots owned by appellee paved, as said lots were low, and not desirable for residence purposes; that there were very few houses in that part of the city; that the lots were intersected by a ravine, and abutted in the rear on the railroad right of way; that the lots, because of their location and character, would have to be sold to persons of very moderate means, who would not be able to pay therefor a price sufficient to include the then value of the lots increased by the cost of paving; and that, generally, the paving would not be beneficial to the owner of said lots, and would not enhance the value of said lots to the extent of the cost of the pavement. It was further alleged that the paving company was the owner of a patented process for paving and that it would not permit other paving companies to use said process or to lay paving of a similar nature to the "bitulithic," which is a composition similar to asphalt laid on a concrete base; that the commissioners of the city of Ft. Worth knew that by designating and requiring that the paving to be done should be bitulithic it practically excluded from the privilege of bidding on said paving other paving companies doing business in Ft. Worth, which were prepared to lay paving essentially of the same kind and wearing quality, but which were not permitted to lay bitulithic pavement without paying to the Texas Bitulithic Company an exorbitant sum for the privilege of doing so. It was further alleged that in so requiring the paving to be bitulithic, the commissioners were guilty of collusion and fraud, and that there-

by they practically stifled and suppressed competitive bidding. It was further alleged that the cost and charge for bitulithic pavement was approximately $2.08¾ per square yard, and that said amount was greatly in excess of the value of said pavement, and that in truth and in fact pavement essentially similar and durable could be laid for an amount not exceeding $1.50 per square yard. It was further alleged that shortly after the acceptance by the city commissioners of the bid of the Texas Bitulithic Company, the defendant duly and legally filed its protest with said board of city commissioners, protesting against the pavement of said street; that said protest was considered by the said commissioners on or about Nober 8, 1911, and that proceedings with reference to the paving of said portion of Jennings avenue were dropped, and nothing further done with reference thereto, and that defendant believed and had reason to believe that the paving thereof had been abandoned and would not be further proceeded with; that on July 9, 1912, some seven months after the protest was filed, and while defendant's president and general manager was out of the state for an extended stay, the board of commissioners, knowing this, and in order to take advantage thereof, caused the city secretary of the city of Ft. Worth to issue notice to the property owners that a hearing would be given to the said owners on July 23, 1912, and that on said date, while defendant's general manager and president was out of the state, and with the fraudulent and collusive purpose to deprive the defendant of the right to be heard on said hearing, passed an ordinance levying a special assessment against defendant's aforesaid property. It was further pleaded that said assessment was greatly excessive and greatly in excess of any enhancement in value by reason of the construction of said pavement, or any benefits to said property by reason thereof. It was further alleged that the levy made and the lien attempted to be fixed against defendant's property and the charge against defendant itself was invalid for various reasons, among which were: (1) That no judgment was rendered by the board of commissioners after the hearing, as required by section 9 of chapter 14 of the charter of the city of Ft. Worth; (2) that the charter provision providing for an appeal from the order and judgment of the city commissioners overruling the protest of a property owner or property owners affected by the paving was unreasonable, invalid, and unconstitutional, in that said charter provision requires that the appeal be perfected within ten days after the hearing. It was alleged that at the time when the property owner is required to take such an appeal and file such suit in the district court under the penalty of being forever barred from doing so the very thing against which he is required to appeal is not in existence, and the property owner does not

and cannot know at the time he is required to file such action whether the paving as it is finally laid will enhance the value of his property to the amount of the cost of the same assessed against said property; that the assessment and the fixing of the lien against the property affected, under the circumstances, would constitute the taking of property of a citizen without due process of law, and therefore be violative of article 1, § 19, of the Constitution of the state of Texas.

[1] The trial was had before a jury, and at the conclusion of the evidence a verdict was rendered for defendant, upon a peremptory instruction, and the plaintiff has appealed. In the briefs of appellant and appellee the question of the constitutionality of the charter provision above noted is not discussed, and there is nothing in the judgment rendered to suggest that the court so instructed the jury upon the theory that the charter provision mentioned was unconstitutional. Therefore we are perhaps justified in concluding that the trial court did not base the peremptory instruction given upon the theory of the unconstitutionality of this provision, nor are we prepared to hold that the provision referred to is violative of the section and article of the Constitution cited. In 1 Page & Jones, Taxation by Assessment, § 142, it is said:

"If sufficient notice of the original making and apportionment of the assessment is given and a full hearing upon the merits is provided for, appeal is not essential to a compliance with the provision forbidding a taking of property without due process of law, and may accordingly be dispensed with. The fact that an appeal is not allowed in the case of improvements in towns, though it is in improvements in cities, does not, by reason of such discrimination, amount to a denial of due process of law. So if notice and hearing are given upon the question of benefits as well as upon other questions, but on appeal the owner is not allowed to show that his land receives no benefit from the contemplated improvement, such restriction upon the issues to be tried on appeal does not violate the constitutional provision requiring due process of law."

In section 134 of the same work it is stated that:

"Whether an opportunity for an appeal is a sufficient compliance with the constitutional requirement forbidding the taking of property without due process of law is a question depending upon the nature of the hearing allowed on appeal. If an opportunity is given on appeal for a full and complete hearing upon the merits, the rights of the property owner are protected and the proceeding constitutes due process of law."

In section 141, Id., wherein the author discusses the validity of statutes limiting the time in which objections may be made by property owners to the assessment, it is said:

"A three-day limitation has been upheld, even where on account of sickness the property owner was not able to file his remonstrance within the time limited."

[2] While the right of appeal from an adverse judgment may not be said to be an inherent right, yet the right to appeal to certain superior courts from the judgment of certain inferior courts is one guaranteed by the Constitution and laws of Texas. Eppstein & Co. v. Holmes, 64 Tex. 560; Ferris v. Streeper, 59 Tex. 312; Texas v. Smith, Dallam, Dig. 407. The Legislature cannot take away the right, either expressly or by implication. Edwards v. Morton, 92 Tex. 152, 46 S. W. 792; Weems v. Watson, 91 Tex. 35, 40 S. W. 722. Yet the Legislature is empowered to enact rules of procedure controlling and limiting the exercise of the right of appeal, and may by law increase, diminish, or change civil and criminal jurisdiction. Baumberger v. Allen, 101 Tex. 352, 107 S. W. 526; Powdrill v. Powdrill, 134 S. W. 272; Muela v. Moye, 185 S. W. 331; S. A. & A. P. Ry. Co. v. Blair, 108 Tex. 434, 196 S. W. 502, 1153. In the last-cited case, which involved the validity of the statute (Acts 1917, c. 76, p. 142), authorizing the Chief Justice of the Supreme Court or any two of the Justices thereof to designate a committee of the justices of the Courts of Civil Appeals to pass upon petitions for writs of error seeking a review of causes by the Supreme Court, Chief Justice Phillips, speaking for the court said:

"It is not to be questioned that the Legislature has the authority to establish the manner in which the appeal shall be taken, and, in doing so, declare where shall rest the authority of determining the right to have it entertained. Titus v. Latimer, 5 Tex. 433. To fix any given mode for an appeal is but to prescribe a regulation by means of which jurisdiction to hear the appeal may be acquired. * * * These provisions of the law did not come from the Constitution. They are the creatures of the Legislature. What the Legislature may create, it may alter. Unless granted by the Constitution, the right of appeal itself is but a privilege; it is not an irrevocable right. It pertains merely to the remedy, and may be modified by the Legislature at discretion."

The right of appeal in this character of proceeding is not one guaranteed by the Constitution specifically, and the mode and manner of exercising it is peculiarly within the control of the Legislature. In granting the charter to the city of Ft. Worth, the Legislature provided the terms under which the right or privilege of appeal should be exercised. In so doing, we do not think the Legislature deprived an aggrieved property owner of any rights in or to property without due process of law. This particular question was discussed in Jones v. City of Houston et al., 188 S. W. 688, and the Court of Civil Appeals for the First district upheld the validity of the provision of the Houston charter providing for an appeal, which provision is practically in the same language as that used in the Ft. Worth charter. The Legislature constituted the city commissioners a quasi judicial body, authorized and empowered to determine the issues presented by protesting property owners. It also provided the means and mode of appeal from the judgment of the city commissioners, act-

ing as a quasi court. We do not think that the mere fact that at the time of the hearing and within the period allowed for perfecting an appeal from the decision of the commissioners, the owner of the property affected by the proposed public improvement and consequent assessment could not fully and definitely determine what the final results would be as to the enhancement in value of his property by the paving being laid would operate as a deprivation of any property rights without due process of law. Under the charter provision the protesting property owner has the right to present to the commissioners the testimony of his witnesses with reference to this matter, and on appeal to the district court he again may submit evidence as to this issue. Should the paving not be done in compliance with the specifications made by the paving company, it is to be presumed that the city commissioners will require the defect to be remedied. Therefore we conclude that the trial court did not give and should not have given the peremptory instruction because of any alleged unconstitutionality of the charter provision mentioned.

This last conclusion is strengthened by the fact that the appellee, in its brief, seeks to sustain the giving of the peremptory instruction and the judgment rendered on only two stated grounds: (1) That the commissioners did not render any formal judgment determining the issues raised by the hearing for the benefit of the protesting property owners, and did not by any formal decree determine that the value of appellee's property would be enhanced in amount equal to the cost of paving; (2) that the city engineer did not "at once" prepare a statement containing the names of persons firms, etc., owning property abutting on the portion of the street sought to be paved, with a sufficient description of the lots abutting thereon, and submitting an estimate of the total costs of the proposed improvement and the cost to be assessed against each owner and his property, as provided in section 8 of chapter 14 of the Ft. Worth City Charter. There was evidence in the trial court: (1) That a petition of the owners of property abutting on this section of the street sought to be paved was filed July 11, 1911. This petition did not contain the names and signatures of the owners of 60 per cent. of the property to be affected by the proposed improvement, and therefore was not in compliance with chapter 14, § 14, of the Charter. The board of commissioners have the authority, under section 5 of this chapter, by resolution to undertake the making of public improvements, by a majority vote, without notice. It also may undertake the improvement to be made upon a petition signed by the owners of 60 per cent. of the frontage of property abutting on the street to be improved. (2) The resolution of the board of commissioners, of date July 11, 1911,

ordering the paving in question to be done, does not disclose that the same was based on a petition filed, and we must, probably, assume that it was not done upon petition, but by independent resolution. This resolution was offered in evidence and excluded by the court, to which action of the court the defendant reserved its bill of exception. (3) Specifications of the Texas Bitulithic Company for the paving were shown to have been filed September 19, 1911. (4) Bids were submitted to the board of commissioners October 10, 1911. (5) By resolution, dated October 17, 1911, the commissioners awarded the contract to the Texas Bitulithic Company. (6) The written petition of William Capps, for appellee, seeking for a postponement of the paving, was filed with the board of commissioners November 8, 1911. (7) By resolution the commissioners approved the contract with the Texas Bitulithic Company December 5, 1911. (8) Newspaper notices to the property owners were issued and published for five consecutive days beginning July 10, 1912, and also personal notices to each property owner affected was ordered issued. The hearing was set for July 23, 1912, upon which date no protesting property owners appeared. (9) The report of the city engineer was filed July 2, 1912.

[3] All of this evidence was offered, but some of it was excluded and exceptions taken to the action of the court with reference thereto. The plaintiff also offered in evidence the certificate of special assessment upon which suit was filed, and upon objection by defendant this evidence was excluded. It has been held that this character of evidence is admissible as prima facie proof of the compliance by the board of commissioners with the necessary steps to fix the lien of the special assessment against the property affected and to fix the personal liability against the owners thereof. Taylor v. Boyd, 63 Tex. 533, 544; Withers v. Crenshaw et al., 155 S. W. 1189. See Kernagan v. City of Ft. Worth, 194 S. W. 626, where this court questioned, without deciding, the constitutionality of such provision, but we think the certificate was admissible as a link in the chain of proof to support plaintiff's cause of action pleaded. It based its cause of action upon the possession and ownership of a certificate, and its issuance to it by the city, and if the necessary steps had been followed to fix the lien, the certificate was admissible as the instrument evidencing plaintiff's ownership of any right to sue upon the cause of action. If notice of the hearing had been published, and the hearing had, and no suit was filed by defendant within 10 days from the conclusion of such hearing for the purpose of contesting the validity of said assessment and the proceedings with reference thereto, as provided in chapter 14, § 10, of the Charter, then defendant might be estopped or concluded from setting up in

this suit any defect or omission in such proceedings which were not jurisdictional in their nature. Gallahar v. Whitley, 190 S. W. 757, writ refused.

Section 8, c. 14, of the City Charter provides:

"When the contract or contracts for improvements have been executed and approved, if any part of the cost is to be assessed against property, or its owner or owners, the city engineer shall at once prepare a statement containing the names of persons, firms or corporations or estates owning property abutting on the highway, or section thereof, to be improved," etc.

It further provides that this estimate of the city engineer shall be submitted to the board of commissioners for approval by them, and any errors therein corrected, and when approved, the board shall then determine and declare the necessity of assessment in part of the cost of the proposed improvements against such owners and their property, etc. The evidence shows that some seven months, from December 5, 1911, to July 2, 1912, elapsed between the making of the contract between the board of commissioners, for the city of Ft. Worth, and the paving company and the submission to said board by the engineer of his report.

[4] The question to be decided by us is, Does such delay, especially in the absence of an appeal by defendant from the hearing accorded to the property owners and from the judgment rendered by the board of commissioners, constitute a jurisdictional defect or infirmity? Appellee urges in support of its contention that the answer should be in the affirmative, that by reason of said delay appellee was lulled into a sense of security, in the belief that the city, through its board of commissioners, had concluded to drop the matter of having the paving done, and that because the appellee's president and general manager was out of the city at the time of the hearing on July 23, 1912, appellee was deprived of an opportunity to present its protest to the board of commissioners and to be heard thereon. The record suggests that in the protest filed by William Capps for appellee on November 8, 1911, the principal insistence was for a postponement of the paving, not for an abandonment thereof. Therefore it may be inferred that by permitting the delay in having the estimate of the city engineer prepared and presented to the board of commissioners said board in part complied with appellee's request for a postponement. If so, and especially in the absence of an appeal from the action of the commissioners of July 23, 1912, in ordering the paving to be made and the assessment to be levied, we do not feel justified in holding that the delay deprived appellee of any right accorded it under the law, or that it was deprived of any notice of the character and extent of the burden to be placed on its property and the charge to be assessed against it personally. In Page & Jones, supra, § 1006, the following is said:

"If, however, notice has in fact been given sufficient to apprise the property owner of the pendency of the proceedings, such notice is sufficient to give jurisdiction, although it is irregular."

In McEneney et al. v. Town of Sullivan, 125 Ind. 407, 411, 25 N. E. 540, 541, it is said:

"The record shows that a petition was presented to the town trustees, and that they adjudged it to be sufficient. This was an adjudication upon a jurisdictional fact, and it is conclusive against a collateral attack. For many years, and by many decisions, it has been held by our court that the decisions of an inferior tribunal upon jurisdictional facts is conclusive where the attack is collateral and not direct."

In support of the above statement the court cites a number of authorities, among which is Knox County v. Aspinwall, 21 How. 539-544, 16 L. Ed. 208; Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579. We might say the authorities are numerous, however, which hold that municipal corporations' power to levy special local assessments must be strictly construed, every material condition precedent complied with, and the money applied only to the very purpose for which such assessment was made. Gould v. City of Paris, 68 Tex. 511, 4 S. W. 650; 2 Dill. Mun. Corp. (4th Ed.) § 769; City of Dallas v. Ellison et al., 10 Tex. Civ. App. 28, 30 S. W. 1128, writ denied, and cases there cited. In 2 Page & Jones, Taxation by Assessment, § 813, it is said:

"In many jurisdictions provision is made by statute for the preparation and filing of estimates, plans or specifications before the public improvement for which the assessment is to be levied is undertaken. These requirements are made for several different reasons. The legislative intent in requiring estimates, plans and specifications is, in part, to make sure that the public officials who undertake the improvement will have before them an amount of information concerning the cost and character of the proposed improvement sufficient to enable them to decide intelligently upon the necessity therefor and the character thereof. An additional reason for requiring such estimates, plans and specifications is that the property owners may be advised of the character and probable expense of the proposed improvement, and have an opportunity for remonstrating against it, if they decide that the assessment will be greater than they care to pay for such improvement. By many statutes it is provided that estimates must be made and filed before the improvement is undertaken. Most of the statutes which make this requirement are mandatory, and the failure to file the estimate as required by such statute invalidates the subsequent proceedings and the assessment. Under such statutes the making and filing of a proper estimate is jurisdictional and without it the public authorities have no power to proceed with the improvement and levy an assessment. * * * A statutory provision requiring the city engineer to report the probable cost of a contemplated improvement, and give the names of the owners of the property abutting on the street and the number of feet owned by each property owner is mandatory. In cases where the estimate cannot subserve the purpose for which one is intended by statute, it is ordinarily held, in the absence of a statutory provision requiring it even in such cases, that the Legislature did not intend to require an estimate."

For the reasons above given and in the light of the authorities cited, we have con-

cluded that while the making of the estimate by the city engineer and the submission of the same to the board of commissioners was essential to the validity of the assessment, yet in this case the delay in making said estimate does not constitute a jurisdictional defect. The defendant below had notice of the proposed improvement as shown by the protest filed November 8, 1911. Proper notice by advertising was given of the hearing before the board of commissioners on July 23, 1912, and personal notice was alleged by plaintiff to have been given to the defendant, a corporation, and the defendant in its answer practically admitted that such notice had been given to it, but alleged that it was given at a time when the president and general manager was out of the state, and that no one else was authorized to act for or represent the defendant. The charter provides (section 8, c. 14) that notice of the hearing shall be served by publishing same in some newspaper published in the city of Ft. Worth, and by mailing a copy thereof by registered letter to the addresses of each owner, if known, but if not known, then to the address of its agent or attorney, if known; but that service of the notice by advertisement shall be conclusive and binding, and the service by letter shall be merely cumulative. Therefore we conclude that the peremptory instruction cannot be sustained on the theory that no notice was given defendant of the hearing. Since the evidence raises the question, if it does not establish the fact, that defendant had notice of the hearing and therefore legally an opportunity to contest the levying of the assessment against its property, we conclude that the delay in submitting the engineer's report does not constitute a material omission or defect, and that it is not jurisdictional in its nature.

As to the other question raised by appellee, that no judgment was rendered by the board of commissioners upon the hearing ordered by it for the benefit of the property owners, it is perhaps sufficient to say that the record discloses that on the date set for the hearing no property owners were present to protest against said improvements, and that thereupon the ordinance was presented and passed providing for the improvement and assessing a portion of the cost of said improvement against the property abutting on that section of the street and against the owners thereof.

[5] We do not think that the fact that no formal entry of a judgment was entered on the minutes of the board of commissioners precludes the idea that there was in fact a judgment rendered, and that the board of commissioners determined the controversy in favor of having the paving done and the assessment made. The charter does not provide that such judgment shall be entered of record, nor do we think that the law so requires.

While we have not attempted to discuss each of appellant's several assignments, yet, from what has been said hereinabove, it follows that in our judgment the trial court erred in giving the peremptory instruction in favor of defendant, and that the judgment should be reversed, and the cause remanded; and it is so ordered.

Reversed and remanded.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.