## SCANLAN et al. v. GULF BITULITHIC CO.
### No. 1483—5742.

Commission of Appeals of Texas, Section A.
Jan. 6, 1932.

Walter F. Brown, of Houston, for plaintiffs in error.

Vinson, Elkins, Sweeton & Weems and C. M. Hightower, all of Houston, for defendant in error.

HARVEY, P. J.

This is a suit on a paving certificate for the sum of $7,810.22, and for foreclosure of the paving lien. The suit was brought by the defendant in error, Gulf Bitulithic Company, against the plaintiffs in error, Kate Scanlan, Lillian Scanlan, Stella Scanlan, and Alberta Scanlan, sisters. The trial court peremptorily instructed a verdict in favor of the company, and rendered judgment against the four sisters, jointly and severally, for the amount sued for, including $1,609.75, interest, and $1,650 attorney's fees, and for foreclosure of the alleged lien. The parcel of land in controversy was jointly owned by the four sisters at the time of trial, each owning an undivided one-fourth interest therein. The judgment provided that each of said sisters may pay her proportionate part of the judgment, and thereby release her undivided interest in the land from the lien as foreclosed. That judgment has been affirmed by the Court of Civil Appeals. 27 S.W.(2d) 877.

Various sections of article 1VA of the city charter of the city of Houston provide, among other things, as follows:

Section 5 provides for the initiation of paving proceedings by a petition of property owners, and prescribes what must be shown in the petition; and further provides for the hearing of said petition by the city council, after giving the prescribed notice by publication; and further provides that, if the city council finds, among other things, that the making of the proposed improvements is for the public good, and ought to be made, the city council "shall by resolution so declare, and shall order the making of said improvements."

Section 6 provides, among other things, that, "when said resolution provided for in section 5 * * * has been adopted, the City Engineer shall forthwith prepare and file with the City Council complete specifications for the proposed improvements, so prepared as to permit, if desired by the Council, the receiving of bids for any portion of said improvements separately from the other portions, which specifications shall be examined, and if found correct, be approved by the City Council." This section further provides for the advertisement for bids, and for

the letting of the contract for the construction of said improvements.

Section 7 reads as follows:

"When said contract has been executed, the City Engineer shall at once prepare and file with the Council'a written statement, which shall contain the names of the persons, firms, corporations or estates owning property abutting on the highway, or portion thereof, to be improved, with the number of front feet owned by each, and a description of their property, either by lot or block number, or in any other manner sufficient to identify it. Said statement shall also contain the estimated total cost of the whole improvement, and the estimated cost per front foot of abutting property proposed to be assessed against owners thereof. Said statement shall be examined by the City Council, and any errors or mistakes therein corrected, but no error or mistake in said statement shall invalidate any proceeding had or assessment made under the terms of this Article. Upon approval of said statement by the Council it shall so declare by resolution. Said resolution shall order a hearing to be given before the City Council to said owners, their agents or attorneys, and set a time and place for the same; at which hearing an opportunity shall be given to said owners, or any party interested, to be heard concerning the special benefits, if any, to said property by means of said improvements, or concerning any error or invalidity in any proceeding with reference thereto, or concerning any matter or thing connected therewith, and said resolution shall direct the City Secretary, or such other officer of the city as may be designated by the Council, to give notice of said hearing by publishing a copy of said resolution in some daily paper of general circulation in the City of Houston, not less than three times before the date set forth for said hearing, the first publication to be not less than ten (10) days prior to the day of said hearing. The said notice shall also contain a general statement of the nature of the proposed improvements, and the limits within which same are to be constructed, and a statement of the amount per front foot of property abutting on said improvement which it is proposed to assess against owners thereof.

"The City Secretary, or officer designated by said resolution, shall publish said notice as herein provided, and shall also give notice of said hearing by posting copies of said notice in the postoffice in Houston, Texas, by registered mail, addressed to said property owners, if their address be known, but if unknown, then to their agents or attorneys, if known. Said notices shall be posted not less than ten days prior to the date of the hearing. But said notice by posting shall be only cumulative of and in addition to the notice herein provided to be given by ad-vertisement, which shall be sufficient and valid without any further notice.

"At the time and place named in the said resolution and notice, said property owners, their agents and attorneys, shall receive a full and fair hearing before the City Council as to the special benefits, if any, of said proposed improvements to their property, and as to any error or invalidity in any proceeding with reference to said improvements, or any objection to said assessment, or any matter in connection therewith, and shall be entitled to subpœna witnesses and produce testimony. Said hearing shall be kept open and adjourned from day to day and time to time until all protests shall have been duly heard.

"Upon conclusion of the said hearing the City Council shall determine from the evidence before it the amount, if any, to be assessed against each property owner and their property, but no assessment shall be made against any property owner or their property in excess of the actual benefits to said property in the enhanced value thereof by means of said improvement, nor until after the said notice and hearing. The City Council shall have full power to inquire into and determine all facts necessary to the adjudication of any objection made to said proposed assessment, and to ascertain said benefits, and shall render such judgment and order in each case as shall be just and proper. Any objection to the said assessment or to the validity of any proceeding with reference to the said improvement, shall be filed with the Council in writing before said hearing is closed, and shall be deemed waived unless so filed."

Section 8 reads: "At any time within ten days after the closing of said hearing anyone having an interest in property subject to assessment in any proceeding hereunder, or who may be subject to a personal liability for a part of the cost of improvements ordered by said Council, may institute suit in any court of competent jurisdiction to contest the validity in whole or in part of said assessment, or lien or personal liability fixed by said proceedings, or the validity or regularity of any of said proceedings. Any person who shall fail to institute such suit within said ten days, or to diligently prosecute the same to final judgment, shall be forever barred from contesting in any other proceeding, and said assessment, lien or personal liability, or the validity of any proceedings with reference to said improvement, and this bar and estoppel shall bind the heirs, assigns, successor or personal representatives of such persons."

Section 9 reads partly as follows:

"When the hearing above mentioned has been concluded, the City Council shall by ordinance assess against the several owners of the property abutting upon the highway,

or portion thereof ordered to be improved, and against their property, such proportionate part of the cost of the improvement as may have been adjudged against them, respectively. The portion of said cost assessed against any such owner or his property, together with reasonable attorney's fees and costs of collection when incurred, shall constitute a personal liability of said owner and a first and prior lien upon said property, superior to all other liens, claims or titles, except for lawful ad valorem taxes. Such ordinance shall fix and declare said lien and liability and shall state the time and manner of payment of said assessments. * * *

"* * * The fact that more than one parcel of land the property of one owner or of two or more persons, have been assessed together shall not invalidate the same, or any claim of personal liability thereunder. * * *

"The portion of the cost of an improvement determined by the Council to be payable by the owners of property abutting thereon, shall be apportioned between them in accordance with the front foot plan or rule, in proportion as the frontage of each owner is to the whole frontage to be improved; provided, that if in individual cases the Council shall determine that the strict application of this rule would result in injustice or inequality, then the said Council shall adopt such rule of apportionment as will produce substantial equality among said owners, considering burdens imposed upon and benefits received by them. * * *

"Any error or omission in describing property or in designating owners, or any other error or mistake, may be corrected at any time by said Council or at the suit of any interested party. * * *"

The paving certificate sued on was issued to the defendant in error, who was the contractor, in a paving proceeding instituted and conducted under the above charter provisions, for the paving of Telephone road, a public street of the city of Houston. Said proceeding was duly instituted by petition of property holders, on June 16, 1924. which petition was duly and regularly heard on June 23, 1924, by the city commission of said city; and the prescribed resolution was adopted, ordering the paving of Telephone road, between Polk avenue and Lawndale avenue. In this resolution, the material of which the pavement was to be constructed was designated, and the pavement was ordered to be made 35 feet wide; said street being 50 feet wide. In due time the city engineer filed specifications for the said improvements, which specifications consisted of a standard form and what is termed a "bidding sheet." Said standard form was made up of a set of specifications previously prepared for use in connection with any paving work of this char-

acter which the city might order to be made. In this instrument was specified all the details of street paving work, as applied to streets generally. The "bidding sheet" stated the terminal points of the proposed pavement, and the width of such pavement, to wit, 35 feet, and contained detailed estimates of the quantity or extent of the paving work to be done, such as the number of cubic yards of excavation, the number of square yards of pavement, and concrete base, etc. After due advertisement for bids, at unit prices, the contract was, on August 2, 1924, let to the defendant in error for the construction of said improvements on a unit basis. The city engineer thereafter prepared and filed the written statement provided for in section 7 of the city charter, which was duly approved by the city commission, and a hearing on benefits was ordered to be held, as therein provided. Due notice of said hearing was given by publication and by registered mail, as provided in the charter. A copy of said notice was sent by registered mail to each of the plaintiffs in error. The hearing was held in March, 1925, and none of the plaintiffs in error appeared at the hearing. The city commission heard evidence, and duly determined the amount of benefits that would accrue to the owners of the parcel of land in question, on account of said improvements. None of the plaintiffs in error filed any objection, of any character, pending such hearing; nor did they ever institute suit to contest the validity or regularity of any of said proceedings. On June 15, 1925, after the said construction work was completed, the city commission passed an ordinance accepting the work, and, among other things, declaring a lump sum assessment in the sum of $7,810.22 against T. H. Scanlan Estate, Kate Scanlan, Lillian Scanlan, Stella Scanlan, Alberta Scanlan, Charlotte Scanlan, Carrie Scanlan, and M. E. Scanlan, collectively, as owners of said parcel of land, and against said land as an entirety, and declaring a lien on said land as an entirety. The ordinance also directed the issuance of the paving certificate here sued on.

■■ The plaintiffs in error contend that the specifications filed by the city engineer, and approved by the city commission, were not "complete specifications for the proposed improvements," as called for by the provision of section 6 which has been quoted. The specifications did not specify what area of the street, with reference to the middle line of the street, was to be covered by the proposed pavement; nor was the grade line of the proposed pavement, with reference to abutting property, specifically and definitely shown.

After careful consideration, we have become satisfied that the specifications, as filed and approved, were sufficient to preserve the

jurisdiction of the city commission. They were sufficiently comprehensive to enable the city commission to determine the approximate cost of the proposed improvements and the extent and character of work to be done, and to enable bidders to bid intelligently for the doing of the work on a unit basis. The omissions pointed out above constituted mere irregularities to be corrected, at the instance of any particular property owner who might be peculiarly interested in having the correction made. If the word "complete," as used in said charter provision, be given the meaning and effect contended for here, it would follow that jurisdiction would be lost if the specifications were deficient in the most trivial respect, for they would not be "complete." Such a technical meaning cannot be reasonably ascribed to the term, in the connection in which it is used in said charter provision. Considering the nature of the document called for, it is reasonable to believe that a substantial compliance with said provision is all that was meant to be required as a basis for jurisdiction, even should it be granted that the said provision was meant to be mandatory. 2 Page & Jones, Taxation by Assessment, § 823.

In section 7, provision is made for interested property owners to be heard "as to any error or invalidity in any proceeding with reference to said proceeding," and that "any objection to * * * the validity of any proceeding with reference to said improvement shall be filed with the City Council before said hearing is closed, and shall be deemed waived unless so filed." By section 8 it is provided, in effect, that, unless the interested property owner files suit, within the time there specified, to contest "the validity or irregularity of any of said proceedings," he shall be precluded from such a contest elsewhere. These provisions comprehend the defects in the specifications under consideration, and, since the plaintiffs in error disregarded said provisions, they cannot be heard now to complain of such defects. Beatty v. Panhandle Construction Co. (Tex. Civ. App.) 275 S. W. 716 (writ refused); Herring v. City of Mexia (Tex. Civ. App.) 290 S. W. 792, 797 (writ refused); Dillon v. Whitley (Tex. Civ. App.) 210 S. W. 329; Ft. Worth v. Capps Land Co. (Tex. Civ. App.) 205 S. W. 491; 2 Page & Jones, Taxation by Assessment, § 1027.

The plaintiffs in error further complain of an alleged material change in the work, after the hearing on benefits was held. The alleged change has reference to the location of the proposed pavement along the section of the street which adjoins their property. The facts upon which this contention is based are these: The pavement on that section of the street, when it was finally laid, lacked but eighteen inches of reaching the east line of the street; the property of the plaintiffs in error being on the west side of the street. This resulted in a wider unpaved space being left between the pavement and the property line of the plaintiffs in error than would have been if the pavement had been laid in the middle of the street. The specifications for this paving work did not call for the pavement to be laid in the middle of the street. The authority of the city, with regard to the location of the pavement in the street, was left unrestrained. Since no objection on that score was interposed by the plaintiffs in error, at the hearing on benefits, they should be held to have acquiesced in the leaving of the city free to determine, during the progress of the work, where the public interest required the pavement to be laid, with reference to the middle line of the street (authorities, supra). We have not overlooked the fact that, after the contract was let, and before the hearing on benefits was held, the city engineer, with the approval of the city commission, prepared and had in the files of his office a working profile or drawing for the guidance of the contractor in the doing of the work. In that drawing, it was indicated that the pavement was to be laid in the middle of the street. But there is no evidence to show that any of the plaintiffs in error, prior to the completion of the work, ever saw or heard of said instrument or was misled thereby in any respect.

We have duly considered all the other complaints of the plaintiffs in error, which go to the validity of the assessment in question, and find no merit in any except the one which relates to the failure to apportion liability for the assessment that was levied in the lump sum of $7,810.22.

At the time said paving proceedings were begun in June, 1924, and for some years before that time, the land in controversy was owned jointly by the four Scanlan sisters, who are the plaintiffs in error here, and their sister Charlotte. The history of the title to said land is as follows: In the year 1898 this land, together with various other parcels in the city of Houston, belonged to T. H. Scanlan and his wife, Sophia Scanlan, as community property. They had eight children, all daughters, to wit, Kate, Lillian, Stella, Alberta, Charlotte, Marguerite, Carrie, and M. E. Scanlan. None of the eight daughters ever married. In the year mentioned, Sophia Scanlan died intestate, and her community half of all the above-mentioned property descended to the eight daughters. During the interval of time that elapsed between the date of Sophia Scanlan's death and the year 1919, T. H. Scanlan and three of the daughters (Carrie Scanlan, Marguerite Scanlan, and M. E. Scanlan) died intestate, and their respective undivided interests passed to Kate, Lillian, Stella, Alberta, and Charlotte, in regular course of descent. Thus it was that these

five daughters, prior to the institution of said paving proceeding, had become the joint owners of all said property, each owning an undivided fifth interest therein. There never was an administration of the estate of T. H. Scanlan or his wife, or that of any of the daughters who had died; and none of the property formerly owned by T. H. Scanlan and his wife has ever been partitioned. In the year 1926 Charlotte Scanlan died intestate, and her undivided one-fifth interest in said property descended to her four sisters, who are the plaintiffs in error here. At the trial in the court below, it was agreed by all parties that the following facts, among others, were true:

"Defendant Miss Kate Scanlan, as is generally well known, in behalf of herself and her sisters, maintains an office in and operates the eleven-story Scanlan Building in the City of Houston, and has done so for many years, in the name of 'T. H. Scanlan Estate.'

"There has never been maintained in the Probate Court of Harris County, Texas, or elsewhere, such an estate as 'T. H. Scanlan Estate,' nor is same incorporated nor in any manner a separate legal entity as such.

"The Deed Records of Harris County disclose that after the death of T. H. Scanlan all of the surviving children gave a power of attorney to defendant Kate Scanlan to manage their joint properties; that since the execution of the power of attorney, Miss Kate Scanlan has acted under the power of attorney in the management of the properties so inherited by defendants from their deceased parents.

"There had never been any partition of the properties owned by T. H. Scanlan at the time of his death and those which have not since been conveyed away still stand on the deed records in the name of T. H. Scanlan.

"Miss Kate Scanlan, since the execution of said power of attorney, has maintained an office in the City of Houston in the Scanlan Building, in the name of 'T. H. Scanlan Estate,' for the purpose of conducting said business. That all lease contracts for tenants in said Scanlan Building have been executed in the name of 'T. H. Scanlan Estate,' and that said defendants have used the name of 'T. H. Scanlan Estate,' for convenience in handling, operating and conducting their business, and the said joint property of the defendants in Harris County, Texas, is generally known, referred to, and described as the 'T. H. Scanlan Estate' property.

"That since the death of T. H. Scanlan, all of the joint properties of the defendants inherited as aforesaid have been carried on the assessment rolls of Harris County, Texas, in the name of 'T. H. Scanlan Estate,' and taxes have been paid each year in the name of 'T. H. Scanlon Estate.'

"That Miss Kate Scanlan, in the control and management of the joint properties of herself and sisters carries a bank account in the name of 'T. H. Scanlan Estate,' and checks are issued in conducting said business in the name of 'T. H. Scanlan Estate.'

"That it was the purpose and intent of the power of attorney given Miss Kate Scanlan to avoid the necessity of having each individual sister to sign leases and other instruments necessary to operating and conducting the business, and it was intended and designated to operate and conduct the business of the said sisters and defendants herein under the name of 'T. H. Scanlan Estate.'"

We have concluded that the assessment that was made in the lump sum of $7,810.22, in and by the ordinance of June 15, 1925, without an apportionment of same, was not authorized by the hereinabove quoted charter provisions contained in section 9, and therefore was and is invalid. There is nothing in said provisions which shows authority in the city commission to make the lump sum assessment it did, without providing means by which the liability of each joint owner, and her property, could be discharged by payment of a proportionate part of the sum assessed. The language used in said charter provisions, in so far as it relates to the laying of assessments and the charging of property owners with personal liability therefor, is of essentially the same import as that of the charter provisions that were involved in the case of City of Dallas v. Atkins, 110 Tex. 627, 223 S. W. 170, 171. In that case the Supreme Court held that: "Where several persons jointly own property, and an assessment is made against them as such owners to meet part of the cost of a street improvement, it is essential to separate the amount of the liability of each owner." We have discovered nothing in the said charter provisions, contained in section 9, which calls for the application of a different rule in charging property with paving assessments, for the authority to charge assessments against a person's property is conferred by the same language by which is conferred the authority to charge the person, himself, with liability. There is nothing else in the charter to show that this language does not bear the same meaning, as regards apportionment of assessments, when applied to the one class of assessments as it does when applied to the other class. That charter provision contained in section 9, which reads: "The fact that more than one parcel of land, the property of one owner or of two or more persons, have been assessed together, shall not invalidate the same, or any claim of personal liability thereunder," is not applicable to the question under consideration. The fact that authority is given for an assessment against two or more tracts of land together has no bearing on the matter of apportionment of an assessment made against

property which is jointly owned by several persons.

The defendant in error relies on the case of Griffin v. Waxahachie (Tex. Com. App.) 276 S. W. 201, as sustaining the contention that the assessment made in the present case, though invalid as a personal liability against the joint owners, is nevertheless valid as against the property in controversy, and constitutes a valid lien thereon. But that case is distinguishable from this case on the facts. In that case, as in this, the paving assessment was made against a parcel of land, as an entirety, in the hands of heirs whose interests remained undivided; but in that case the ancestor died, and descent was cast after the paving proceedings had been instituted, and after the city had passed the required resolution ordering the proposed paving work to be done.

It is further contended that the plaintiffs in error and their sister, Charlotte, are shown by the agreed facts above quoted to have been partners doing business under the firm name "T. H. Scanlan Estate," during the progress of said paving proceeding; and that the assessment made against the partnership in the firm name is binding on the constituents of the firm. The agreed facts do not disclose a partnership. They show that the "business," which was conducted under the assumed name of "T. H. Scanlan Estate," was the management and control of such affairs of the Scanlan sisters as related to the property jointly owned by them. Those affairs were conducted by Miss Kate Scanlan for herself and as agent and attorney in fact for her sisters. The adoption of an assumed name, as a convenient mode of designating all the joint owners, in transactions relating to the common property, did not have effect to change the legal relation of the several sisters, with respect to the common property, from a tenancy in common to one of partnership.

Since the assessment in the form that it was levied is invalid, a recovery on the certificate, as it stands, cannot be had. We therefore recommend that the judgment of the trial court and that of the Court of Civil Appeals, affirming same, be reversed, and that the cause be remanded, without prejudice to any proceeding which any of the parties might see fit to institute in the premises.

### CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.