## UVALDE CONST. CO. v. LAWRENCE et al.

No. 12198.

Court of Civil Appeals of Texas. Dallas.

March 21, 1936.

Rehearing Denied April 18, 1936.

Bartlett, Thornton & Montgomery and H. P. Kucera, City Attorney, all of Dallas, for appellant.

Geo. T. Burgess, Jeff D. Stinson, and Lively, Dougherty, & Alexander, all of Dallas, for appellees.

LOONEY, Justice.

The city of Dallas instituted this suit on a paving certificate issued to the Uvalde Paving Company, for $2,340, purportedly the pro rata part of the cost of paving 267 feet on the east side of Lattimer street in said city. The certificate is payable, one-half by Joe Z. Lawrence, and one-eighth each by Julia Florence Galloway, Lida Mae Lytel, J. B. Galloway, and Annie Galloway Riggs (the Galloway heirs), in accordance with their reputed interests in the abutting property. Plaintiff sought judgment for the pro rata part due by each, together with foreclosure of the assessment lien on the interest of each in the property. Mrs. Leola M. Miller, widow of L. B. Miller, deceased, and George W. Morris, were brought in as defendants, on the allegation that each claimed some interest in the property, and as to them foreclosure was also sought. The Uvalde Paving Company intervened, adopted the allegations of plaintiff, and alleged that it owned the cause of action therein asserted and was entitled to enforce the demand, hence prayed for appropriate relief. Defendants Lawrence, Julia Florence Galloway, Lida Mae Lytel and husband, J. B. Galloway, and Mrs. Annie Galloway Riggs and husband, answered by general denial and specially, to the effect that, having sold and conveyed their interests in the abutting property to Dr. Miller, deceased husband of Mrs. Leola M. Miller, they were no longer interested in the property, and further that, as part consideration for their said conveyance, the Millers assumed the payment of all assessments by the city against said property for said improvement, wherefore they prayed to be discharged. The defendant George W. Morris an-

swered by general denial and a number of special pleas, which will be noticed during the progress of the discussion.

The case was tried without a jury, and resulted in a judgment in favor of defendants, the court holding that the assessment levied August 26, 1931, by the city against the property fronting 267 feet on the east side of Lattimer street was invalid, creating neither a lien on property nor the personal liability of either defendant. The Uvalde Construction Company alone appealed.

The record discloses that, on August 20, 1930, the board of commissioners of the city of Dallas (the then governing body) adopted a resolution ordering the improvement of Lattimer street between designated points, including the 267 feet in front of the property upon which foreclosure is sought. Without enumerating the successive steps taken by city authorities terminating in the adoption of the assessing ordinance and the issuance of the certificate sued upon, we hold that the governing body, the city engineer, and the other city officials acting in the premises, complied substantially with the provisions of the city charter; that on their face the proceedings are regular and sufficient to create, prima facie, the personal liability of owners of the abutting property named in the certificate and the inchoate personal liability of owners not named, for the proportionate cost of the street improvement, and a lien upon the interest in the abutting property owned by each, respectively.

However, following the adoption by the governing body of the original resolution, we think the city engineer erred in the statement filed by him, in that he ascribed to the ownership of Lawrence and the Galloway heirs, 267 feet of the frontage on Lattimer street, whereas the most satisfactory evidence shows that they owned only 150 feet; and he omitted altogether to name G. W. Morris as the owner of any of said frontage, whereas we think the evidence shows that he owned at least 117 feet of this frontage, and these errors were carried forward into, and affected the correctness of, the assessing ordinance later adopted by the governing body of the city.

The disposition of this appeal, we think, necessarily turns on the ownership of the property in question at the time the original resolution ordering the improvement was adopted. Several theories, based upon maps and other evidence, are presented in argument; but we are of opinion that the most satisfactory and conclusive evidence in regard to the ownership of the property is furnished by the judgment of the Forty-Fourth judicial district court, rendered October 24, 1932, in the suit by George W. Morris, originally filed against Dr. L. B. Miller, involving the title to this property. The record discloses in this connection that, on November 24, 1930, the defendants, Joe Z. Lawrence and the Galloway heirs, to wit, J. B. Galloway, Lida Mae Lytel and husband, Annie Galloway Riggs and husband, and Julia Florence Galloway, by guardian Bedford Galloway, and Bedford Galloway individually (owner of a one-third life estate in the land), conveyed their interests in the land to L. B. Miller in consideration, among others, of the assumption by Miller of the payment of all assessments made and levied by the city of Dallas against the property by reason of the street improvement. In the suit mentioned, Mrs. Miller recovered 150 feet of the frontage, and Morris recovered the remaining 117 feet. So, we conclude that, at the inception of the paving enterprise, Lawrence, the Galloway heirs, and Miller, owned only 150 feet of the abutting property, and that, under the assumpsit, Dr. Miller became and was primarily liable for the payment, to the extent of his ownership, of the taxes levied by the city for such improvement, hence his widow, Mrs. Leola Miller, is liable for only $150/267$ths of $2,340, being the total cost of the improvement.

Throughout, Mrs. Miller recognized and admitted her liability to pay for the improvement in proportion to her ownership of the property, and prior to the institution of suit, tendered to the paving company the amount of the installment that would have been due for such interest, which being refused, she reasserted in an appropriate plea her willingness to pay an amount proportionate to her ownership, and even offered, if required, to pay the money into the registry of court. However, the paving company refused to accept the tender, because it was thought that its acceptance might jeopardize the rights of the company as to the remainder of the assessment.

In view of this situation, we think the court erred in not rendering judgment for the paving company against Mrs. Miller, on her plea of tender for $150/267$ths of

$2,340, with 7 per cent. interest per annum from August 26, 1931, the date of the assessing ordinance, to May 17, 1932, the date of the rejection of the tender, together with foreclosure of the paving lien on her said interest in the abutting property. But we do not think the company is entitled' to recover interest accruing since the latter date, attorney's fees, or court costs, and judgment will be here rendered accordingly.

■ This brings us to consider the status, in the litigation, of Lawrence and the Galloway heirs. It is obvious, we think, that they are not liable at all on the paving certificate, for the reason that purportedly it evidences personal liabilities and liens for the cost of improving property abutting 267 feet on Lattimer street, when in fact they did not own, in the aggregate, more than 150 feet; the city being without power to require payment of more than was justly chargeable for the frontage owned. This doctrine is fundamentally sound and universally recognized. The charter, under which the city acted, forbids the imposition of a personal charge or lien for an amount in excess of special benefits in enhanced value of property owned. A case in point is City of Mexia v. Montgomery (Tex.Civ.App.) 7 S.W. (2d) 594 (writ refused), where the Waco court held that a paving certificate evidencing an assessment levied against property and owners of one-half undivided interest, as sole owners, was void and unenforceable. Also see Scanlan v. Gulf Bitulithic Co. (Tex.Com.App.) 44 S.W. (2d) 967, 80 A.L.R. 852; Uvalde, etc., Co. v. Lyons (Tex.Civ.App.) 289 S.W. 202 (writ refused).

But aside from the paving certificate, and notwithstanding the errors of the city engineer in stating that Lawrence and the Galloway heirs owned 267-foot frontage and that of the governing body in attempting to assess a greater amount than was due, we are of opinion that the facts pleaded and proven established, as a matter of law, the personal liability of these parties and fixed a lien upon their property for the cost of the improvement proportionate to the amount of frontage actually owned by them.

The applicable charter provision reads: "The lien of such assessment shall revert back and take effect as of the date of the original resolution ordering the improvement, and the passage of such resolution shall operate as notice of such lien to all persons. Any error or mistake in such ordinance in the name of the owner of property assessed shall not invalidate the lien or personal liability thereby created, but the same shall nevertheless exist against the real and true owner of such property as if correctly described." The assessing ordinance contains the following: "* * * if in any case any person is named as an owner who has no interest in the property, or any person owning an interest therein is omitted, there is assessed against the true owner or owners, whether named or unnamed, and his or their interest in the property that part of the total assessment against such property which such interest therein bears to the whole property; the assessment where there is more than one owner being several and not joint, both as to the lien hereby created and the personal liability of the owners."

■ In the conveyance by Lawrence and the Galloway heirs to the Millers, the latter assumed payment of the paving obligation, and on acceptance of this assumption by the paving company, the relation of Lawrence and the Galloway heirs was changed from primary obligors to that of sureties. This doctrine is well settled in this state. See Hill v. Hoeldtke, 104 Tex. 594, 142 S.W. 871, 40 L.R.A.(N.S.) 672; Carpenter v. Ferris Nat. Bank (Tex.Civ. App.) 60 S.W.(2d) 495, 498, and authorities cited. Although neither the prayer of plaintiff nor intervener specifically asks for the enforcement of the secondary liability of Lawrence and the Galloway heirs, yet as the pleadings and evidence justify such relief, the same will be granted under the prayer for general relief. See Weimbold v. Hyde (Tex.Civ. App.) 294 S.W. 899; George v. Williamson (Tex.Com.App.) 23 S.W.(2d) 675; Aston v. Allison, 91 S.W.(2d) 852, by this court. Therefore, judgment will be rendered against these parties, fixing their liability as sureties as authorized by statute (articles 6247 and 6248, R.S.1925).

But intervener contends that; as Lawrence and the Galloway heirs failed to institute suit in a court of competent jurisdiction within ten days after the hearing contesting the validity of the paving proceedings or the assessment, they and those claiming under them are now barred and estopped to contest the validity of the assessment.

Section 1 (j) of the City Charter provides that: "At any time within ten days after the hearing herein provided for has been concluded, any person or persons having an interest in any property which may be subject to assessment under this Act, or otherwise having any financial interest in such improvement or improvements, or in the manner in which the cost hereof is to be paid, who may desire to contest on any ground the validity of any proceeding that may have been had with reference to the making of such improvements, or the validity in whole or in part of any assessment or lien or personal liability fixed by said proceedings, may institute suit for that purpose in any court of competent jurisdiction. Any person who shall fail to institute such suit in said period of ten days, or who shall fail to diligently prosecute such suit in good faith to final judgment, shall be forever barred from making any such contest or defense in any other action and this estoppel shall bind their heirs, successors, administrators and assigns. The City of Dallas and the person or persons to whom the contract has been awarded shall be made defendants in such suit, and any other proper parties may be joined therein * * *." In this connection, the charter also provides that an affidavit shall be filed, stating that the suit is brought in good faith, and not to injure the city or the contractor, or any owner of real estate abutting on the improvement; also provides that, during the pendency of said suit, the work may be suspended at the election of the city or contractor; that an appeal shall be perfected within thirty days from the adjournment of the term of court; and that same is entitled to advancement in the courts of both original and appellate jurisdiction. However, this provision of the city charter must be construed and given a meaning in harmony with another pertinent provision of the charter, section 1 (i), reading: "* * * Any error or omission in describing property or designating the name of owners, or any other error or omission may be corrected at any time by the Board of Commissioners or at the suit of any interested party. In any suit brought under the provisions of this section, it shall be proper to join as defendants two or more property owners who are interested in any single improvement or any single contract for such improvement; the person or persons who own property at the date of any ordinance providing for the assessment thereof, shall be severally and personally liable for their respective portions of the said assessment * * *."

We think it obvious that the suit permitted within ten days after the hearing is one based on grounds basic in nature, challenging the validity of the entire proceedings, or the assessment in whole or in part, and not upon mere errors of omission or commission. The authority of the city to act in the premises and assess the several owners and their abutting property with the proportionate part of the cost of the improvement is not challenged. The contention of the owners is that, unless the errors of omission and commission mentioned are corrected, the result will be an unequal distribution, among the respective owners of the abutting property, of the costs of the improvement; hence a taking of property without due process of law. These questions, we think, come clearly within the scope and meaning of the latter quoted provision of the charter, and are such as may be corrected at any time (within the period of the applicable limitation statute) by the governing body of the city, or at the suit of interested parties, as is sought in the instant case. We therefore overrule this contention of intervener.

We will now inquire as to the status, in the litigation, of the defendant George W. Morris. Among other contentions, he insists that the description of the land in the paving certificate and in the assessment proceedings was insufficient to fix a lien against any property owned by him. The paving certificate is disregarded, because in no sense binding upon defendant Morris. However, the facts otherwise show that, after the adoption of the original resolution authorizing the improvement, and after the proceedings leading to and awarding of the contract for the work, the then governing body of the city caused to be duly published a notice, to all owners of abutting property, of a hearing, which contained a general description of the improvements to be made, and a statement of the amount to be assessed against abutting property. The charter, section 1 (h), contains this provision: "* * * but it shall not be necessary to include in such notice a description of any property; or the name of its owners, but such notice shall nevertheless be binding and conclusive upon all owners of property, etc.,

* * *." The notice as published also contained the following: "To all owners of property abutting on Lattimer Street in the City of Dallas, between its intersection with the South line of Eakin Street and its intersection with the North line of Dawson Street, and to owners of street railways or steam railways occupying the same, of a hearing before the Board of Commissioners of the City of Dallas, to such owners, relating to the proposed assessment of such owners, and their property for the cost of improving said street within said limits." The points named on Lattimer street, between which the improvements were to be made, include the 267 feet of abutting property of which Morris owned 117 feet. The assessing ordinance contained the following: "Provided, however, that in cases where property is owned by more than one person, there is assessed against each of said persons and against his interest in the property only that portion of the total assessment against such property which his interest therein bears to the whole property; and if in any case any person is named as an owner who has no interest in the property, or any person owning an interest therein is omitted, there is assessed against the true owner or owners, whether named or unnamed, and his or their interest in the property, that part of the total assessment against such property which such interest therein bears to the whole property; the assessment where there is more than one owner being several and not joint, both as to the lien hereby created and the personal liability of the owners."

It is also insisted by defendant Morris that the notice to property owners was not sufficient, in that it failed to state the amount per front foot that the property was to be assessed. The notice stated "that the amount per front foot assessed against each owner is as follows: $8.51; 5.20." The charter provides, section 1 (h), that: "The said notice shall contain a statement of the time and place of the hearing herein provided for * * *, and a statement of the amount per front foot proposed to be assessed against the abutting property." The city engineer testified, in substance, that the figures "$8.51; 5.20," meant that much per front foot was assessed against the property; there being two widths to the street, the wider portion being 50 feet between curbs the property was assessed $8.51 per front foot;

and the narrower portion being 30 feet between curbs, the property was assessed $5.20 per front foot.

We think the notice sufficient as to the description of property to be improved and was also sufficient to put any reasonably prudent property owner upon notice that he and his property were to be assessed for the improvement in some amount, which, in our opinion, the slightest inquiry would have rendered absolutely certain. We therefore overrule these contentions.

The record discloses that on April 20, 1931, and prior thereto, the governing body of the city consisted of a mayor and a board composed of four commissioners, and that on May 1, 1931, by charter amendment, the governing body was changed to a council-manager form, consisting of nine councilmen. All proceedings under consideration, including the hearing preceding the adoption of the assessing ordinance, were conducted by the board of commissioners; however, the assessing ordinance of August 26, 1931, was adopted by the new governing body, but without an additional hearing, this action being based upon the prior proceedings conducted by the board of commissioners. Predicated upon this situation, defendant Morris insists that the assessment is a nullity and unenforceable as to him, in that he was deprived of a hearing before the board that imposed the assessment. This contention is overruled. It would be confusing and disastrous in the extreme if a mere change in the form of the governing body of a city would halt, disrupt, or render nugatory public proceedings theretofore undertaken. The action involved and the power exercised is that of the city, without regard to the form of the governing body. Provision is made in the statutes for just such a situation. Article 1175, R.S. 1925, mentions, among other powers that may be exercised by home-rule cities (subdivision 1), "The creation of a commission, aldermanic or other form of government," and in article 1178, R.S., it is provided that: "The adoption of any charter hereunder or any amendment thereof shall never be construed to destroy any property, action, rights of action, claims and demands of any nature or kind whatever vested in the city under and by virtue of any charter theretofore existing or otherwise accruing to the city, but all such rights of action, claims or demands shall

vest in and inure to the city and to any persons asserting any such claims against the city as fully as though the said charter or amendment had not been adopted hereunder. The adoption of any charter or amendment hereunder shall never be construed to affect the right of the city to collect by special assessment any special assessment heretofore levied under any law or special charter for the purpose of paving or improving any street, highway, avenue or boulevard of any city, or for the purpose of opening, extending, widening, straightening or otherwise improving the same, nor affect any right of any contract or obligation existing between the city and any person, firm or corporation for the making of any such improvements. For the purpose of collecting any such special assessment and carrying out of any such contract, the provisions of all charters shall be continued in force." This contention of defendant Morris is also overruled.

■ Although neither the statement filed by the city engineer, nor the assessing ordinance, named G. W. Morris as owner of any of the property abutting on the section of Lattimer street to be improved, yet, as heretofore stated, we find from the evidence that in fact he did own 117 feet of this frontage; therefore, under the charter provisions and the proceedings hereinbefore set out, a personal liability and a lien on his abutting property, at least inchoate in nature, where established for the proportionate part of the total assessment, being $117/267$ths of $2,340, for which amount we think the paving company is entitled to judgment, with interest at 7 per cent. per annum from this date, together with foreclosure of the paving lien on the abutting property owned by this defendant. While the assessing ordinance provides for the payment of interest at the rate of 7 per cent. per annum on deferred payments, this necessarily presupposes an ascertained personal liability, and lien upon an ascertained frontage. The owner is entitled to pay the amount assessed against him, and secure the release of his property from the lien; but until the amount of the assessment and the frontage are ascertained, this could not be done. The statement filed by the city engineer and the assessing ordinance failing to name Morris as the owner of property abutting on Lattimer street, and the governing body of the city having failed to correct the error, it becomes our duty, as authorized by the city charter, to ascertain the amount assessed against Morris and his abutting property. So, we conclude that, under the circumstances, the paving company is only entitled to interest from the date of this judgment.

■ The assessing ordinance made no provision for attorney fees for failure to pay, except as authorized in conditions prescribed for an assignable certificate, but as no certificate evidencing the liability of Morris was issued, as just shown, he was not in default in failing to pay the assessment until the amount thereof was ascertained. So, we hold that in no event could he be held liable for the payment of an attorney's fee.

In harmony with these views, we reverse the judgment of the court below and render judgment in favor of intervener: Against Mrs. Leola M. Miller for $150/267$ths of $2,340, being $1,314.60, to bear 7 per cent. interest per annum from this date, with foreclosure of the paving lien on her property that abuts on Lattimer street described in the judgment in Morris v. Miller, heretofore referred to; on payment of which, the paving lien upon her said property will ipso facto be released, and if not voluntarily paid, intervener may have the issuance and execution of appropriate process for its enforcement; also against Joe Z. Lawrence and the Galloway heirs, as sureties, for same amount as the judgment rendered herein against Leola Miller, as provided in articles 6247, 6248, R.S. 1925, for the enforcement of which appropriate process may issue and be executed; and against G. W. Morris for $117/267$ths of $2,340, being $1,025.40, to bear 7 per cent. interest per annum from this date, with foreclosure of the paving lien upon that portion of the land recovered by Morris in the judgment rendered in Morris v. Miller, heretofore mentioned, that abuts 117 feet on Lattimer street, and all costs of suit incurred as to him, both in this and in the court below; for the enforcement of which intervener may procure the issuance and execution of appropriate process.

Reversed and rendered.